IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN VANCE and TIM JANECYK, for themselves and others similarly situated, | ) ) ) | Case No. 20 C 577 |
| Plaintiffs, | ) ) | Judge Charles P. Kocoras |
| v. | ) ) | Magistrate Judge Gabriel A. Fuentes |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| Defendant. | ) ) ) ) | **JURY TRIAL DEMANDED** **INJUNCTIVE RELIEF DEMANDED** |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs STEVEN VANCE and TIM JANECYK, on behalf of themselves and all other similarly situated individuals ("Plaintiffs"), by and through their respective attorneys, bring this Second Amended Class Action Complaint against Defendant INTERNATIONAL BUSINESS MACHINES CORPORATION ("IBM") and allege the following:

## INTRODUCTION

1.     Every individual has unique biometric identifiers by which he or she can be identified.  One such biometric identifier is a person's facial geometry.

2.     As the Illinois General Assembly has found: "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).

1

3.     Pursuant to Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS §14/1, *et seq.*, Illinois prohibits among other things, private entities from collecting, capturing, obtaining, disclosing, redisclosing, disseminating or profiting from the biometric identifiers or information of an individual without providing written notice and without obtaining a written release from the impacted individual or his authorized representative.   BIPA also requires private entities in possession of biometric identifiers to adopt retention and destruction policies and to take measures to prevent the release of that information.

4.     In violation of BIPA, at relevant times, Defendant IBM, a multinational technology company headquartered in the State of New York, collected, captured, obtained, disclosed, redisclosed, disseminated and profited from the facial geometric scans of thousands of Illinois citizens in violation of BIPA's requirements.   Specifically, using a set of images from the photo-sharing service Flickr, IBM collected, captured and otherwise obtained facial geometric scans of individuals depicted in approximately one million photos and built a database containing each of the scanned individuals' unique "craniofacial measurements."   IBM then, among other things, disclosed, redisclosed and otherwise disseminated to third parties the biometric identifiers and information in the database in order to profit.   IBM possessed the biometric identifiers and information without having adopted or made public any policy, written or otherwise, to govern the retention and destruction of thereof.

5.     Defendant IBM engaged in the above-described conduct: (a) without informing the impacted individuals, including Plaintiffs and members of the proposed class (the "Class Members"), that their biometric identifiers were being collected, captured, obtained, disclosed, redisclosed and otherwise disseminated; (b) without informing the impacted individuals in writing of the purpose of the collection, capture, obtainment, disclosure, redisclosure and dissemination of

the biometric identifiers and information; and (c) without seeking and obtaining written releases from such impacted individuals or their authorized representatives.

6. In violation of BIPA, Defendant IBM also profited from its unlawful use of the biometric identifiers and information of Plaintiffs and Class Members. On information and belief, IBM used the biometric identifiers and information of Plaintiffs and Class Members to improve the accuracy of its own facial recognition products and to cement its market-leading position in artificial intelligence. From 2016 to 2018, IBM derived more revenue from artificial intelligence than any other company in the world. In 2018 alone, IBM's revenue from artificial intelligence products totaled more than $2.5 billion. Those products include IBM Watson Visual Recognition, which IBM clients can use to estimate the age and gender of people depicted in images and, in some instances, identify specific individuals. IBM owns the intellectual property developed by its researchers and will not disclose the data sets used to train its Watson products.

7. As the Illinois General Assembly has found and the Illinois Supreme Court has confirmed, the harm to Plaintiffs and Class Members as a result of the BIPA violations alleged herein has already occurred.

8. Further, as businesses worldwide compete to develop ever more advanced facial recognition technology, the race for data imperils the privacy of individuals everywhere. Public policy in Illinois provides that given the risks of unwanted data collection and disclosure, its citizens need the power to make decisions about the fate of their unique biometric identifiers and information. Defendant IBM's actions robbed Plaintiffs and Class Members of that power.

9. Moreover, as a direct result of Defendant IBM's actions, each individualized scan of a person's facial geometry can be tied back to the Flickr account to which an originating photo was posted. This, in turn, made and continues to make it possible for third parties to connect the

biometric identifiers and information of Plaintiffs and Class Members that have been collected, captured, and otherwise obtained to other photos in which Plaintiffs, a member of the Class and/or others appear, subjecting Plaintiffs and Class Members to increased surveillance, stalking, identity theft, social engineering (a type of hacking technique) and other invasions of privacy and fraud. Moreover, as a direct result of IBM's actions, Plaintiffs' and Class Members' biometric identifiers and information are no longer under their control and are available to a potentially unlimited range of unknown individuals for whatever uses they please. These injuries, which are imminent and clearly impending, are in addition to the injuries Plaintiffs and Class Members have already sustained as a result of IBM's actions.

10.     Plaintiffs bring this Second Amended Class Action Complaint seeking: (a) statutory damages of $5,000 per BIPA violation, or, alternatively, if Defendant IBM acted negligently, $1,000 per BIPA violation, along with attorneys' fees and costs; (b) disgorgement of IBM's ill-gotten gains derived from the use of the unlawfully-acquired data; and (c) an injunction (i) barring Defendant IBM from any further use of individuals' biometric identifiers and information; (ii) barring IBM from continuing to collect, capture, obtain, disclose, redisclose, disseminate and profit from Plaintiffs' and Class Members' biometric identifiers and information; (iii) requiring IBM to delete and destroy all biometric identifiers and information in its possession, custody and control; and (iv) requiring IBM to claw back the biometric identifiers and information from any third parties to whom IBM disclosed, redisclosed and disseminated it.

**PARTIES**

11.     At relevant times, Plaintiff STEVEN VANCE was – and remains – an Illinois resident. Defendant IBM performed facial geometric scans of Plaintiff Vance from photos Plaintiff Vance had uploaded to Flickr.

4

12.     At relevant times, Plaintiff TIM JANECYK was – and remains – an Illinois resident.  Defendant IBM performed facial geometric scans of Plaintiff Janecyk from photos Plaintiff Janecyk had uploaded to Flickr.

13.     Defendant IBM is a New York corporation with its corporate headquarters in Armonk, New York and a regional headquarters in Chicago, Illinois.  IBM has a registered agent in Illinois.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties in this action, the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there are 100 or more members of the Class.  Because it is estimated that the Class will have thousands of members and Defendant IBM's intentional and reckless violations of BIPA are punishable by statutory damages of $5,000 per violation, the amount in controversy is well in excess of $5,000,000.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Defendant IBM because IBM used and disseminated data derived directly from Illinois-based Flickr accounts and exposed residents of Illinois to ongoing privacy risks within Illinois based on the collection, capture, obtainment, disclosure, redisclosure and dissemination of their biometric identifiers and information.  Furthermore, many of the photographs IBM used for its unlawful collection, capture and obtainment of biometric identifiers and information were created in Illinois, uploaded from Illinois, and/or managed via Illinois-based user accounts, computers, and mobile devices.  Because of the scope and magnitude of IBM's conduct, which included identifying the location of the

subjects in a large percentage of affected photographs, IBM knew that its collection, capture, obtainment, disclosure, redisclosure and dissemination of impacted individuals' biometric identifiers and information would injure Illinois residents and citizens. IBM knew or had reason to know that collecting, capturing, obtaining, disclosing, redisclosing and disseminating Illinois citizens' and residents' biometric identifiers and information without providing the requisite notice or obtaining the requisite releases would deprive Illinois citizens and residents of their statutorily-protected privacy rights, neutralize Illinois citizens' and residents' ability to control access to their biometric identifiers and information via their Illinois-managed devices, expose Illinois citizens and residents to potential surveillance and other privacy harms as they went about their lives within the state, and impair Plaintiffs' ability to continuing posting pictures of themselves and other Illinois residents to Flickr and other social media or image hosting platforms. IBM also has had a large and continuous presence in Illinois for many years, including a regional headquarters and, at least, hundreds of employees. Some of those Illinois employees work on IBM's visual recognition products that IBM, on information and belief, has been able to develop and improve due in part to its unlawful use of Plaintiffs' and Class Members' biometric information and identifiers. As part of its extensive business activities in Illinois, IBM also promotes its visual recognition products — on information and belief, developed in part from the unlawful use of Plaintiffs' and Class Members' biometric identifiers and information — to current and potential customers within the state.

16.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred in Illinois. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over Defendant IBM.

## ILLINIOIS BIOMETRIC PRIVACY LAWS

17.     BIPA seeks to safeguard individuals' biometric identifiers and information.

18.     Biometric identifiers include a scan of an individual's face geometry. 740 ILCS § 14/10.

19.     Biometric information is "any information . . . based on an individual's biometric identifier used to identify an individual." 740 ILCS § 14/10.

20.     Pursuant to BIPA, a private entity, such as Defendant IBM, is among other things: (a) prohibited from collecting, capturing or otherwise obtaining an individual's biometric identifiers and information without providing written notice and obtaining a written release; (b) prohibited from selling, leasing, trading or otherwise profiting from an individual's biometric identifiers and information; (c) prohibited from disclosing, redisclosing or otherwise disseminating an individual's biometric identifiers or information in the absence of circumstances specifically set forth in the statute; and (d) required, to the extent it is in possession of biometric identifiers or information, to develop a written policy, made available to the public, that establishes a retention schedule and guidelines for permanently destroying such identifiers and information. 740 ILCS § 14/15.

21.     BIPA provides for a private right of action and allows a prevailing party to recover liquidated damages in the amount of: (a) $1,000 or actual damages, whichever is greater, for negligent violations of its provisions; and (b) $5,000 or actual damages, whichever is greater, for intentional or reckless violations of its provisions. 740 ILCS § 14/20. BIPA also allows for the recovery of attorneys' fees and costs and injunctive relief. 740 ILCS § 14/20.

## ALLEGATIONS

### I.     Allegations Related to Plaintiff Vance

22.     Plaintiff Vance has been a member of Flickr since 2006.

23.     In or about 2008, Plaintiff Vance uploaded a photo of himself and two family members to Flickr from his computer in Illinois (the "2008 Photo"). Plaintiff Vance uploaded numerous other photos to Flickr.

24.     Flickr and its parent company – Yahoo! – subsequently made the 2008 Photo, among millions of other photos, available to Defendant IBM, among others.

25.     Defendant IBM subsequently collected, captured and otherwise obtained biometric identifiers and information of individuals, including Plaintiff Vance, in sixty-one of Plaintiff Vance's photos, including the 2008 Photo. IBM then disclosed, redisclosed, disseminated and profited from Plaintiff Vance's biometric identifiers and information.

26.     Defendant IBM: (a) never advised Plaintiff Vance in writing or otherwise that it was performing scans of his facial geometry; (b) never informed Plaintiff Vance in writing or otherwise of the purpose for which it was collecting, capturing, obtaining, disclosing, redisclosing and disseminating Plaintiff Vance's biometric identifiers and information; and (c) never sought, nor received, a written release from Plaintiff Vance or his authorized representative that allowed IBM to collect, capture, obtain, disclose, redisclose and disseminate Plaintiff Vance's biometric identifiers and information.

27.     As alleged above, Defendant IBM's conduct has injured Plaintiff Vance and subjected him to additional imminent and certainly impending injuries.

## II.    Allegations Related to Plaintiff Janecyk

28.    Plaintiff Janecyk is an accomplished photographer, having focused his work in portraiture and street life photography. Plaintiff Janecyk has pioneered a certain style of portraiture that involves taking extreme close-ups of faces, often placing a wide-angle lens less about twelve inches from the subject's face. Plaintiff Janecyk has taken many thousands of such photographs, and has taught several related photography classes.

29.    Many of Plaintiff Janecyk's subjects include strangers Plaintiff Janecyk approaches on the streets in and near Chicago. While introducing himself to individuals, Plaintiff Janecyk often assures them that he is taking their photographs as a hobbyist, that their photographs will not be used by other parties, and that he is not using them for a commercial purpose. Plaintiff Janecyk must sometimes invest time into building a relationship of trust before subjects will allow photographs— for instance, Plaintiff Janecyk has spent several days building relationships with weary subjects at rallies and other sensitive events.

30.    In 2008, Plaintiff Janecyk signed up for a Flickr account in the Village of Tinley Park, Illinois, and has since then uploaded in excess of a thousand of his photographs to Flickr. Among those photos is a 2011 photo depicting Plaintiff Janecyk's own face ("2011 Photo").

31.    Flickr and its parent company – Yahoo! – subsequently made the 2011 Photo, among millions of other photos, available to Defendant IBM, among others.

32.    Defendant IBM subsequently collected, captured and otherwise obtained biometric identifiers and information of individuals, including Plaintiff Janecyk, in seven of Plaintiff Jannecyk's photos, including the 2011 Photo. IBM then disclosed, redisclosed, disseminated and profited from Plaintiff Janceyk's biometric identifiers and information.

33. As is the case for all Plaintiffs and Class Members, IBM has, upon information and belief, captured biometrics from Plaintiff Janecyk's photographs appearing in the dataset — including the 2011 Photo — by automatically locating and scanning Plaintiff Janecyk's face, and by extracting geometric data relating to the contours of his face and the distances between his eyes, nose, and ears – data which IBM then used to create a unique template of Plaintiff Janecyk's face, as set forth more fully below.

34. The resulting unique face template was: (a) used by Defendant IBM for research purposes and to develop its facial recognition technology; and (b) disseminated by IBM to third parties.

35. Plaintiff Janecyk's face template was also used to recognize his gender, age, and race.

36. Plaintiff Janecyk never consented, agreed, or gave permission – written or otherwise – to Defendant IBM for the collection or storage of his unique biometric identifiers or biometric information. Plaintiff Janecyk had no idea IBM was ever in possession of any of his photographs.

37. Further, Defendant IBM never provided Plaintiff Janecyk with, nor did Plaintiff Janecyk ever sign, a written release allowing IBM to collect or store his unique biometric identifiers or biometric information.

38. Likewise, Defendant IBM never provided Plaintiff Janecyk with an opportunity to prohibit or prevent the collection, storage, use, or dissemination of his unique biometric identifiers or biometric information.

39. Nevertheless, Defendant IBM took copies of Plaintiff Janecyk's photographs, located Plaintiff Janecyk's face in the photos, scanned Plaintiff Janecyk's facial geometry, created

a unique face template corresponding to Plaintiff Janecyk, and shared the biometric data with third parties, all in direct violation of BIPA.

## III.    Defendant IBM's Unlawful Conduct

40.    In 2014, Yahoo!, then the parent company of Flickr, released to the public over 99 million photos uploaded by Flickr users from 2004 through 2014 as part of a single, downloadable dataset called YFCC100M ("Flickr Dataset"). Each image in the Flickr Dataset – identified via a URL – came with information that could connect the image back to the Flickr account with which the photo was affiliated. For many photos, the dataset also contained geographic information regarding where the photo was taken, as well as "tags" that provided further information about the photos' subjects.

41.    The photographs Yahoo took to create the Flickr Dataset were taken from Flickr users without their knowledge or express consent, and were made publicly available to entities such as IBM.

42.    Images of Plaintiffs' and Class Members' faces were among the photos in the Flickr Dataset.

43.    In or about January 2019, after the Flickr Dataset was made available, Defendant IBM created its own dataset (the "IBM Dataset") from a subset of the Flickr Dataset. The IBM Dataset consisted of approximately one million frontal-facing images of human faces – including Plaintiffs' and Class Members' faces – that were clear enough to permit further analysis.

44.    After culling the photographs to be used in its IBM Dataset, Defendant IBM processed the photographs to capture the biometrics of the faces appearing therein. Specifically, for every detected face it extracted 68 key-points and processed each one by extracting at least ten facial coding schemes, including: (b) Craniofacial Distances (which characterize all the vertical

distances between elements in a face: the top of the forehead, the eyes, the nose, the mouth, and the chin); (b) Craniofacial Areas (measures corresponding to different areas of the cranium, such as eye fissures and lips); (c) Craniofacial Ratios; (d) Facial Symmetry; (e) Facial Regions Contrast; (f) Skin Color; (g) Age Prediction; (h) Gender Prediction; (i) Subjective Annotation; and (j) Pose and Resolution.

45.     The below figure illustrates the data points Defendant IBM employed as the basis for its extraction of class members' craniofacial measures for the first three coding schemes, *supra.*



46.     By doing so, Defendant IBM collected, captured, and obtained Plaintiffs' and Class Members' biometric identifiers and information in violation of BIPA. In further violation of BIPA, IBM engaged in the conduct described herein without providing the requisite notice to, or obtaining the requisite releases from, the subjects of the photos or their authorized representatives, including Plaintiffs and Class Members.

12

47. In 2019, Defendant IBM began disclosing, redisclosing and otherwise disseminating its own "Diversity in Faces" dataset (the "DiF Dataset") to third-party researchers and private entities. The DiF Dataset included the approximately one million images of faces contained in the IBM Dataset — again, including images of Plaintiffs' and Class Members' faces — along with the biometric identifiers and information of the subjects whose faces appeared in the photos, such as a "comprehensive set of annotations of intrinsic facial features that includes craniofacial distances, areas and ratios, facial symmetry and contrast, [and] skin color."

48. Each image in the DiF Dataset could be traced back to the individual Flickr account to which it was originally uploaded.

49. In collecting, capturing and otherwise obtaining the biometric identifiers and information of Plaintiffs and Class Members and, subsequently, disclosing, redisclosing and otherwise disseminating those biometric identifiers and information – all without providing the requisite notice, obtaining the requisite releases or satisfying any of BIPA's other provisions that would excuse it from BIPA's mandates – Defendant IBM violated BIPA.

50. In further violation of BIPA, Defendant IBM failed to use a reasonable standard of care to protect Plaintiffs' and Class Members' biometric identifiers and information from disclosure and, in fact, affirmatively disclosed their biometric identifiers and information.

51. In further violation of BIPA, as a private entity in possession of Plaintiffs' and Class Members' biometric identifiers and information, Defendant IBM failed to adopt or make available to the public a retention schedule or guidelines for permanently destroying such biometric identifiers and information once the initial purpose for collecting them had or has been satisfied.

52. In further violation of BIPA, Defendant IBM profited from the biometric identifiers and information of Plaintiffs and Class Members. For instance, IBM profited from its unlawful

collection, disclosure, redisclosure and dissemination of Plaintiffs' and Class Members' biometric data by, among other things, developing and improving its own for-profit facial recognition technology using the insights gleaned from the biometric identifiers and information and the algorithms trained on it, allowing IBM to: (a) sell more of its facial-recognition products to customers; (b) become a market leader in facial-recognition technology; and (c) burnish its brand reputation as a leader in the field.

53.     Defendant IBM's violations of BIPA were intentional and reckless or, in the alternative, negligent.

## III.    Plaintiffs' and Class Members' Injuries and Damages

54.     As alleged herein, as a result of Defendant IBM's unlawful conduct, Plaintiffs and Class Members have already sustained injuries and face many more imminent and certainly impending injuries, which injuries they will continue to suffer.

55.     Defendant IBM's unlawful conduct has resulted in, among other things: (a) Plaintiffs' and Class Members' unique biometric identifiers and information being collected, captured, obtained, disclosed, redisclosed, and otherwise disseminated without the requisite notice having been given and without the requisite releases having been obtained; and (b) Plaintiffs and Class Members being deprived of the very control over their biometric identifiers and information that BIPA was designed to protect.

56.     To this day, Plaintiffs and Class Members do not know which, or how many, individuals or entities have received, obtained, accessed, stored, disclosed, redisclosed or otherwise made use of Plaintiffs' and Class Members' biometric identifiers and information,

exposing them to the imminent and certainly impending injuries of identity theft, fraud, stalking, surveillance, social engineering and other invasions of privacy.[1]

57.     As a result of Defendant IBM's misconduct, Plaintiffs and Class Members have no recourse for the fact that their biologically unique information has been compromised.  Moreover, Plaintiffs and Class Members are likely to withdraw from biometric-facilitated transactions and other facially-mediated electronic participation.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs brings this action on behalf of himself and as a class action under Federal Rule of Civil Procedure 23, seeking damages and equitable relief on behalf of the following Class for which Plaintiffs seek certification: All Illinois residents whose faces appear in the IBM Dataset and/or DiF Dataset.

59.     Excluded from the Class are: (a) Defendant IBM; (b) any parent, affiliate or subsidiary of Defendant IBM; (c) any entity in which Defendant IBM has a controlling interest; (d) any of Defendant IBM's officers or directors; or (e) any successor or assign of Defendant IBM. Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

60.     Plaintiffs reserve the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

61.     **Numerosity.**  While the exact number of Class Members is not known at this time, Defendant IBM collected, captured, obtained, disclosed, redisclosed and otherwise disseminated biometric identifiers and information from approximately one million images of faces, and

---

[1] *Facial Recognition Tech: 10 Views on Risks and Rewards,*
https://www.forbes.com/sites/forbestechcouncil/2018/04/03/facial-recognition-tech-10-views-on-risks-and-rewards/#54d3e1716b3c (accessed on Mar. 12, 2020)

Plaintiffs estimate the total number of Class Members to be in the thousands. Consistent with Rule 23(a)(1), the proposed Class is therefore so numerous that joinder of all members is impracticable. Class Members may be identified through objective means, including objective data available to Defendant IBM regarding the images in the IBM and DiF Datasets. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media and/or published notice

62. **Commonality and predominance.** Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the proposed Class. Common questions include, but are not limited to, the following:

> a. Whether Defendant IBM collected, captured and otherwise obtained the biometric identifiers and information of Plaintiffs and Class Members;
>
> b. Whether Defendant IBM possessed the biometric identifiers and information of Plaintiffs and Class Members;
>
> c. Whether Defendant IBM disclosed, redisclosed and otherwise disseminated the biometric identifiers and information of Plaintiffs and Class Members;
>
> d. Whether Defendant IBM profited from the biometric identifiers and information of Plaintiffs and Class Members;
>
> e. Whether Defendant IBM provided the notice required by BIPA before collecting, capturing, obtaining, disclosing, redisclosing and otherwise disseminating the biometric identifiers and information of Plaintiffs and Class Members;

f.     Whether Defendant IBM obtained written releases from Plaintiffs and Class Members or their authorized representatives before collecting, capturing, obtaining, disclosing, redisclosing and otherwise disseminating the biometric identifiers and information or Plaintiffs and Class Members;

g.     Whether Defendant IBM had in place – and disclosed to the public – the written retention and destruction policies required by BIPA while in possession of Plaintiffs' and Class Members' biometric identifiers and information;

h.     Whether Defendant IBM protected Plaintiffs' and Class Members' biometric identifiers and information from disclosure using the reasonable standard of care within IBM's industry and in a manner that was the same as or more protective than the manner in which IBM protects other confidential and sensitive information;

i.     Whether Plaintiffs and Class Members suffered damages as a proximate result of Defendant IBM; and

j.     Whether Plaintiffs and Class Members are entitled to damages, equitable relief and other relief.

Moreover, based on Defendant IBM's public statements, there is no reason to believe it treated any of the photos on which it performed a facial geometric scan differently from any others in terms of: (a) the way in which IBM obtained the photos; (b) the biometric identifiers and information collected, captured and otherwise obtained therefrom; (c) IBM's failure to provide the requisite disclosures to Plaintiffs and Class Members or their authorized representatives; (d) IBM's failure to obtain the requisite releases from Plaintiffs and Class Members or their authorized

representatives; (e) IBM's disclosure, redisclosure and dissemination of Plaintiffs' and Class Members' biometric identifiers and information to third parties; or (f) the nonexistence of a written, publicly-available retention and destruction schedule. In short, whether IBM violated BIPA's requirements is a question that can uniformly be answered for all Class Members, including Plaintiffs.

63. **Typicality.** Plaintiffs' claims are typical of the claims of the Class they seek to represent because Plaintiffs and all members of the proposed Class have suffered similar injuries as a result of the same practices alleged herein. Plaintiffs has no interests to advance adverse to the interests of the other members of the proposed Class.

64. **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the proposed Class and has retained as his counsel attorneys experienced in class actions and complex litigation.

65. **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual basis, may not be of such magnitude as to make the prosecution of individual actions against IBM economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. Moreover, individual litigation of the legal and factual issues of the case would increase the delay and expense to all parties and the court system. A class action, however, presents far fewer management difficulties and provides the benefit of a single adjudication, economy of scale and comprehensive supervision by a single court.

66.     In the alternative, the proposed Class may be certified because:

a.      The prosecution of separate actions by each individual member of the proposed Class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendant IBM;

b.      The prosecution of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party Class Members or which would substantially impair their ability to protect their interests; and

c.      Defendant IBM acted or refused to act on grounds generally applicable to the proposed Class, thereby making final and injunctive relief appropriate with respect to members of the proposed Class.

67.     Pursuant to Rule 23(c)(4), particular issues are appropriate for certification – namely the issues described in paragraph 46, above – because resolution of such issues would advance the disposition of the matter and the parties' interests therein.

## CLAIMS FOR RELIEF

### COUNT ONE
### (VIOLATION OF BIPA – 740 ILCS § 14/15(a))

68.     Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint as though fully set forth herein.

69.     As alleged above, Defendant IBM violated BIPA by possessing Plaintiffs' and Class Members' biometric identifiers and information without developing a written policy that it made available to the public that established a retention schedule and guidelines for permanently destroying biometric identifiers and information.

70.     Defendant IBM's violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

71.     As a direct and proximate result of Defendant IBM's violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

72.     Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

73.     Unless and until enjoined and restrained by order of this Court, Defendant IBM's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons.  Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

74.     Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

## COUNT TWO
### (VIOLATION OF BIPA – 740 ILCS § 14/15(b))

75.     Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint as though fully set forth herein.

76.     As alleged above, Defendant IBM violated BIPA by collecting, capturing, and otherwise obtaining individuals' biometric identifiers and information, including the biometric identifiers and information of Plaintiffs and Class Members, without providing the requisite written information and without obtaining the requisite written releases.

77.     Defendant's violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

78.    As a direct and proximate result of Defendant IBM's violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

79.    Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

80.    Unless and until enjoined and restrained by order of this Court, Defendant IBM's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons.  Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

81.    Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

## COUNT THREE

## (VIOLATION OF BIPA – 740 ILCS § 14/15(c))

82.    Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint, as though fully set forth herein.

83.    As alleged above, Defendant IBM violated BIPA by unlawfully profiting from individuals' biometric identifiers and biometric information, including the biometric identifiers and information of Plaintiffs and Class Members.

84.    Defendant IBM's violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

85.    As a direct and proximate result of Defendant IBM's violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

86.     Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

87.     Unless and until enjoined and restrained by order of this Court, Defendant IBM's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons.  Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

88.     Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

## COUNT FOUR
### (VIOLATION OF BIPA – 740 ILCS § 14/15(d))

89.     Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint as though fully set forth herein.

90.     As alleged above, Defendant IBM violated BIPA by disclosing, redisclosing and otherwise disseminating individuals' biometric identifiers and information, including the biometric identifiers and information of Plaintiffs and Class Members, even though: (a) neither the subjects of the biometric identifiers and information nor their authorized representatives consented to the disclosure and redisclosure; (b) the disclosure and redisclosure did not complete a financial transaction requested or authorized by the subjects of the biometric identifiers and information or their authorized representatives; (c) the disclosure and redisclosure was not required by State or federal law or municipal ordinance; and (d) the disclosure and redisclosure was not required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

91.     Defendant IBM's violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

92.     As a direct and proximate result of Defendant IBM's violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

93.     Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

94.     Unless and until enjoined and restrained by order of this Court, Defendant IBM's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons.  Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

95.     Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorneys' fees, costs and expenses relating to this action.

## COUNT FIVE
## (VIOLATION OF BIPA – 740 ILCS § 14/15(e))

96.     Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint as though fully set forth herein.

97.     As alleged above, Defendant IBM violated BIPA because, while in possession of Plaintiffs' and Class Members' biometric identifiers and information, it failed to protect from disclosure those biometric identifiers and information: (a) using the reasonable standard of care within IBM's industry; and (b) in a manner that is the same as or more protective than the manner in which IBM protects and protected other confidential and sensitive information.

98.     Defendant IBM's violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

99.     As a direct and proximate result of Defendant IBM's violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

100.    Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

101.    Unless and until enjoined and restrained by order of this Court, Defendant IBM's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons.  Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

102.    Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

## COUNT SIX
## (UNJUST ENRICHMENT)

103.    Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint as though fully set forth herein.

104.    Defendant IBM obtained a monetary benefit from Plaintiffs and Class Members to their detriment.  IBM did so by profiting off of the covert and unauthorized collection of the biometric identifiers and information of Plaintiffs and Class Members, while exposing Plaintiffs and Class Members to a heightened risk of privacy harms and depriving them of their control over their biometric data.

105.	Plaintiffs and Class Members did not authorize Defendant IBM to collect, capture, obtain, disclose, redisclose, disseminate and otherwise profit off of their biometric identifiers and information.

106.	Defendant IBM appreciated, accepted and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from IBM's conduct toward Plaintiffs and Class Members as described herein.

107.	Defendant IBM sold, leased, traded and otherwise profited from – and caused to be sold, leased, traded and otherwise profited from – Plaintiffs' and Class Members' biometric identifiers and information and did not provide full compensation for the benefit received from Plaintiffs and Class Members.

108.	Defendant IBM acquired and caused to be acquired Plaintiffs' and Class Members' biometric identifiers and information through inequitable means in that they collected, captured and otherwise obtained biometric data from Plaintiffs' and Class Members' online photos without permission and in violation of Illinois law.

109.	Plaintiffs and Class Members have no adequate remedy at law.

110.	Under the circumstances, it would be unjust and unfair for Defendant IBM to be permitted to retain any of the benefits obtained from Plaintiffs and Class Members and their biometric identifiers and information.

111.	Under the principles of equity and good conscience, Defendant IBM should not be permitted to retain the biometric identifiers and information belonging to Plaintiffs and Class Members because IBM unlawfully obtained the biometric identifiers and information.

112.	Defendant IBM should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that it unjustly

received as a result of its collection, capture, obtainment, disclosure, redisclosure, dissemination and profiting off of Plaintiffs' and Class Members' biometric identifiers and information, including but not limited to the value of the intellectual property derived therefrom.

**COUNT SIX**
**INJUNCTIVE RELIEF**

113.    Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint as though fully set forth herein.

114.    Plaintiffs and Class Members have clear and ascertainable rights in need of protection – namely: (a) the right to have Defendant IBM abide by its obligations under BIPA; (b) the right to control their biometric identifiers and information; and (c) the right to privacy.

115.    Plaintiffs and Class Members have no adequate remedy at law because a legal remedy cannot retrieve the biometric identifiers and information that Defendant IBM unlawfully collected, captured, obtained, disclosed, redisclosed, disseminated and otherwise profited from, and cannot end the invasion of privacy caused by IBM's conduct.

116.    Plaintiffs and Class Members will suffer irreparable harm, as alleged herein, caused by Defendant IBM if its conduct is not so restrained, requiring injunctive relief.

117.    Plaintiffs and Class Members are likely to succeed on the merits because, as alleged herein, Defendant IBM unlawfully collected, captured, obtained, disclosed, redisclosed, disseminated and otherwise profited from Plaintiffs' and Class Members' biometric identifiers and information despite being prohibited from doing so.

118.    Plaintiffs and Class Members seek injunctive relief: (a) barring Defendant IBM from any further use of Plaintiffs' and Class Members' biometric identifiers and information; (b) barring Defendant IBM from continuing to collect, capture, obtain, disclose, redisclose, disseminate or profit from Plaintiffs' and Class Members' biometric identifiers and information;

(c) requiring Defendant IBM to delete and destroy Plaintiffs' and Class Members' biometric identifiers and information; and (d) requiring Defendant IBM to claw back the biometric identifiers and information from any third parties to whom IBM disclosed, redisclosed and disseminated it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Steven Vance and Tim Janecyk, on behalf of themselves and on behalf of the Class, respectfully seek from the Court the following relief:

a. Certification of the Class as requested herein;

b. Appointment of Plaintiffs as Class representative and their undersigned counsel as Class counsel;

c. An award of damages for Plaintiffs and members of the proposed Class, including statutory and punitive damages;

d. An award of equitable, injunctive and declaratory relief for Plaintiffs and members of the proposed Class, including an injunction (i) barring Defendant IBM from any further use of individuals' biometric identifiers and information; (ii) barring IBM from continuing to collect, capture, obtain, disclose, redisclose, disseminate and profit from Plaintiffs' and Class Members' biometric identifiers and information; (iii) requiring IBM to delete and destroy all biometric identifiers and information in its possession, custody and control; and (iv) requiring IBM to claw back the biometric identifiers and information from any third parties to whom IBM disclosed, redisclosed and disseminated it;

e. An order requiring Defendant IBM to disgorge into a common fund or constructive fund, for the benefit of Plaintiffs and members of the proposed

Class, proceeds that it unjustly received as a result of its collection, capture, obtainment, disclosure, redisclosure, dissemination and profiting off of Plaintiffs' and Class Members' biometric identifiers and information;

f.  An award of pre-judgment and post-judgment interest for Plaintiffs and members of the proposed Class, as permitted by law;

g.  An award for Plaintiffs and members of the proposed Class of reasonable attorneys' fees and costs of suit, including expert witness fees; and

h.  An award for Plaintiffs and members of the proposed Class of any further relief the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable.

Dated: March 12, 2020

Respectfully submitted,

/s/ Scott R. Drury
SCOTT R. DRURY

Arthur Loevy
Michael Kanovitz
Jon Loevy
Scott R. Drury
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900
arthur@loevy.com
mike@loevy.com
jon@loevy.com
drury@loevy.com

/s/ Katrina S. Carroll
KATRINA CARROLL

Gary Lynch
Katrina Carroll
Kyle A. Shamberg
Nicholas R. Lange
CARLSON LYNCH LLP
111 West Washington Street, Suite 1240
Chicago, Illinois 60602
312.750.1265
glynch@carlsonlynch.com
kcarroll@carlsonlynch.com
kshamberg@carlsonlynch.com
nlange@carlsonlynch.com

**CERTIFICATE OF SERVICE**

I, Scott R. Drury, an attorney, hereby certify that, on March 12, 2020, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Scott R. Drury
*One of Steven Vance's Attorneys*