IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN VANCE and TIM JANECYK, for themselves and others similarly situated, | ) | Case No. 20 C 577 |
| | ) | |
| Plaintiffs, | ) | Judge Charles P. Kocoras |
| | ) | |
| v. | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT IBM'S MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Dated: May 14, 2020

Respectfully submitted,

/s/ Scott R. Drury
SCOTT R. DRURY

Arthur Loevy
Michael Kanovitz
Jon Loevy
Elizabeth Wang
Scott R. Drury
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900
arthur@loevy.com
mike@loevy.com
jon@loevy.com
elizabeth@loevy.com
drury@loevy.com
*Counsel for Plaintiff Steven Vance*

/s/ Katrina S. Carroll
KATRINA CARROLL

Gary Lynch
Katrina Carroll
Kyle A. Shamberg
Nicholas R. Lange
CARLSON LYNCH LLP
111 West Washington Street, Ste 1240
Chicago, Illinois 60602
312.750.1265
glynch@carlsonlynch.com
kcarroll@carlsonlynch.com
kshamberg@carlsonlynch.com
nlange@carlsonlynch.com
*Counsel for Plaintiff Tim Janecyk*

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

    I.      The Illinois Biometric Information Privacy Act ...................................................... 2

    II.     The Plaintiffs .......................................................................................................... 3

    III.    IBM's Unlawful Use of Plaintiffs' and Class Members'
           Biometric Identifiers and Information .................................................................... 3

ARGUMENT ............................................................................................................................ 4

Standard of Review .................................................................................................................. 4

    I.      Illinois's Extraterritoriality Doctrine Does Not
           Bar Plaintiffs' Claims ............................................................................................ 5

          A.     Defendant Cannot Show at the Rule 12(b)(6) Stage
                  that Plaintiffs' Claims Would Require an Extraterritorial
                  Application of Illinois Law ......................................................................... 5

          B.     The *Avery* Factors Support a Finding That the "Circumstances"
                  of This Case Occurred "Primarily and Substantially" in Illinois ................ 7

          C.     Defendant's Lack of a Business Relationship with Plaintiffs
                  Does Not Change the Extraterritoriality Analysis ..................................... 11

    II.     The Dormant Commerce Clause Does Not Prevent Illinois From
           Protecting Its Own Residents from Privacy Violations
           Perpetrated Online ................................................................................................ 13

    III.    Scans of Facial Geometry Performed on Photographs Plainly Qualify
           as a "Biometric Identifier" for Purposes of BIPA ................................................ 17

    IV.    Defendant Was Unjustly Enriched When it Profited from Its
           Unfair Activity to Plaintiffs' Detriment ............................................................... 21

CONCLUSION ....................................................................................................................... 24

i

**TABLE OF AUTHORITIES**

**CASES**

*Avery v. State Farm Mut. Auto. Ins. Co.,*
835 N.E.2d 801 (Ill. 2005) ............................................................................. *passim*

*Boelter v. Hearst Communications, Inc.,*
269 F. Supp. 3d 172 (S.D.N.Y. 2017) ........................................................................23

*Bryant v. Compass Group USA, Inc.,*
2020 WL 2121463 (7th Cir. May 5, 2020) ............................................................. *passim*

*Cousineau v. Microsoft Corp.,* 992 F. Supp. 2d 1116
(W.D. Wash. 2012) ........................................................................................23

*Healy v. Beer Inst., Inc.,* 491 U.S. 324 (1989) ............................................... 13, 14, 15

*Hirst v. SkyWest, Inc.,* 910 F.3d 961 (7th Cir. 2018) ....................................................16

*In Re Facebook Biometric Info. Privacy Litig.,*
2018 WL 2197546 (N.D. Cal. May 14, 2018) ........................................................13, 14

*In re Facebook Biometric Info. Privacy Litig.,*
185 F. Supp. 3d 1155, 1171 (N.D. Cal. 2016) ...........................................................18

*LaBella Winnetka, Inc. v. Village of Winnetka,*
628 F.3d 937 (7th Cir. 2010) ............................................................................10

*Mabry v. Standard Industries, Inc.,*
2020 WL 2112372 (N.D. Ill. May 4, 2020) ................................................................21

*Midwest Title Loans, Inc. v. Mills,* 593 F.3d 660 (7th Cir. 2010) ...........................................16, 17

*Moeller v. Am. Media, Inc.,* 235 F. Supp. 3d 868 (E.D. Mich. 2017)............................................23

*Monroy v. Shutterfly, Inc.,*
2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ....................................................... *passim*

*Morley-Murphy Co. v. Zenith Elecs. Corp.,* 142 F.3d 373, 379 (7th Cir. 1998) .........................17

*Morrison v. YTB Intern., Inc.,* 649 F.3d 533 (7th Cir. 2011)................................................. *passim*

*Motorola, Inc. v. Lemko Corp.,*
2010 WL 960348 (N.D. Ill. Mar. 15, 2010)..................................................................24

*Muehlbauer v. General Motors Corp.*,
431 F. Supp. 2d 847 (N.D. Ill. 2006) ..............................................................22

*Newbold v. State Farm Mut. Auto. Ins. Co*,
2015 WL 13658554 (N.D. Ill. Jan. 23, 2015) .................................................10

*Patel v. Facebook, Inc.*, 290 F. Supp. 3d 948 (N.D. Cal. 2018)..................................22

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) ...........................................5

*Perlin v. Time Inc.*, 237 F. Supp. 3d 623 (E.D. Mich. 2017).....................................23

*Reed v. Palmer*, 906 F.3d 540 (7th Cir. 2018).........................................................4

*Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017)........................... *passim*

*Rosenbach v. Six Flags Entm't Corp.,* 129 N.E.3d 1197 (Ill. 2019)...................1, 12, 22

*S. Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097-2100 (2018) ...............................17

*Stevens v. Interactive Financial Advisors, Inc.*,
2015 WL 791384 (N.D. Ill. Feb. 24, 2015) ..................................................22

*Sunny Handicraft Ltd. V. Envision This!, LLC*,
2015 WL 231108 (N.D. Ill. Jan. 16, 2015)....................................................23

*Vesuvius USA Corp. v. Am. Commercial Lines LLC*,
910 F.3d 331 (7th Cir. 2018) ...................................................................4, 5

*Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64 (D.D.C. 2016).......................24

## STATUTES

740 ILCS § 14/1...............................................................................................1, 2

740 ILCS § 14/5.............................................................................................3, 22

740 ILCS § 14/10......................................................................................2, 18, 20

740 ILCS § 14/15..................................................................................... *passim*

740 ILCS § 14/20.......................................................................................10, 15

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................. *passim*

**INTRODUCTION**

This is a case about the ability of Illinois residents to control the fate of their permanent, immutable biometric data and protect their own privacy, safety, and personal autonomy. The Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS §14/1, *et seq.*, "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.,* 129 N.E.3d 1197, 1206 (Ill. 2019). Defendant IBM deprived Plaintiff Steven Vance and Plaintiff Tim Janecyk (collectively, "Plaintiffs"), and thousands of putative Illinois class members ("Class Members"), of that statutorily-guaranteed right when it collected, obtained, disclosed, redisclosed, disseminated, and otherwise profited from their unique facial geometric measurements without providing the requisite notice or obtaining the requisite consent. Indeed, Defendant deprived Plaintiffs and Class Members of the opportunity to exercise any control over the use of their biometric data, the precise harm BIPA was enacted to prevent.

Looking beyond the allegations in the Second Amended Class Action Complaint (the "Complaint"), Defendant now argues that because it purportedly used New York-based computers to harm Illinois residents while they were located in Illinois, its conduct is beyond the reach of the Illinois General Assembly. However, every court to address the issue has found that neither the Illinois extraterritoriality doctrine nor federal constitutional law puts Defendant's conduct outside of BIPA's reach. Plaintiffs' allegations and the reasonable inferences therefrom make clear that the relevant conduct at issue occurred in Illinois. As such, BIPA applies.

Defendant's alternative argument that BIPA categorically exempts scans of facial geometry performed on photographs also fails. To accept Defendant's interpretation would create an exception so large it would swallow the rule. Under Defendant's interpretation, companies

would be free to pilfer and sell individuals' biometric data so long as the person appeared in a photograph. Other courts have squarely rejected this illogical interpretation, which also conflicts with the statutory text. This Court should do the same.

Finally, Defendant's conduct in: (a) illegally collecting Plaintiffs' and Class Members' protected biometric data, without their knowledge or consent; and (b) profiting from its use to the detriment of Plaintiffs and Class Members establishes a claim for unjust enrichment. Nevertheless, attempting to trivialize the detriment to Plaintiffs and Class Members as conjectural privacy harms and based on fictitious pleading standards, Defendant seeks dismissal of the claim. As the Seventh Circuit, Illinois Supreme Court, and the Illinois legislature have found, violations of BIPA constitute real and specific injury—more than enough to constitute a detriment giving rise to unjust enrichment.

## FACTUAL BACKGROUND

### I.      The Illinois Biometric Information Privacy Act

Pursuant to BIPA, Illinois strictly regulates an individual's biometric identifiers and information. *See* 740 ILCS § 14/1, *et seq.* Under Illinois law, biometric identifiers include a "scan of … face geometry." 740 ILCS § 14/10. Biometric information is "any information … based on an individual's biometric identifier used to identify an individual." *Id.*

BIPA prohibits a private entity, such as Defendant IBM, from, among other things: (a) collecting, capturing or otherwise obtaining an individual's biometric identifiers and information without providing written notice and obtaining a written release; (b) selling, leasing, trading or otherwise profiting from an individual's biometric identifiers and information; and (c) disclosing, redisclosing or otherwise disseminating an individual's biometric identifiers or information in the absence of circumstances specifically set forth in the statute. *See* 740 ILCS § 14/15.

In enacting BIPA, the Illinois General Assembly recognized the extreme sensitivity and unique nature of biometrics due to the fact that a person cannot change them if compromised: "Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).

## II. The Plaintiffs

At relevant times, Plaintiffs Steven Vance and Tim Janecyk were and remain Illinois residents. Dkt. 19 ¶¶ 11, 12. Defendant performed facial geometric scans of both Plaintiffs using photographs Plaintiffs had uploaded to Flickr. *Id.* Plaintiff Vance uploaded the photograph at issue to Flickr from his computer in Illinois.[1] *Id.* ¶ 23.

## III. Defendant's Unlawful Use of Plaintiffs' and Class Members' Biometric Identifiers and Information

The conduct at the heart of this litigation is Defendant's collection and use of biometric identifiers and information from a large group of photographs obtained from Flickr, a photograph sharing website. *Id.* ¶ 24. Each photograph Defendant obtained from Flickr contained readily accessible information that connected it back to the Flickr user who posted the photograph. *Id.* ¶ 40. The group of Flickr photographs used by Defendant included photographs of Plaintiffs' faces that they had posted to their Flickr accounts. *Id.* ¶ 42.

Defendant used the Flickr photos in connection with its efforts to cement its market-leading position in artificial intelligence and improve the accuracy of its own artificial intelligence

---

[1] Plaintiff Janecyk also uploaded his photograph from his computer in Illinois. Plaintiffs can amend the Complaint to include this allegation, if necessary.

products. *Id.* ¶ 6. Specifically, Defendant used a subset of the Flickr photographs to create its own biometric dataset (the "Biometric Dataset").[2] The Biometric Dataset consists of approximately one million frontal-facing images of human faces—including those of Plaintiffs and Class Members—that were clear enough to permit biometric analysis. *Id.* ¶ 43. For every image, Defendant processed the photographs to capture the biometrics of the faces appearing therein, extracting 68 key-points and processing each one by extracting at least ten facial coding schemes, including: (a) Craniofacial Distances (which characterize the vertical distances between elements in a face); (b) Craniofacial Areas (measurements corresponding to different areas of the cranium, such as eye fissures and lips); (c) Craniofacial Ratios; (d) Facial Symmetry; (e) Facial Regions Contrast; (f) Skin Color; (g) Age Prediction; (h) Gender Prediction; (i) Subjective Annotation; and (j) Pose and Resolution. *Id.* ¶ 44.

At no point did Defendant provide notice to account holders that it was obtaining and using their biometric identifiers and information, much less seek their consent to engage in such conduct. *Id.* ¶¶ 26, 36, 46. After Defendant obtained Plaintiffs' and Class Members' biometric identifiers and information, it then disclosed, redisclosed, and disseminated those identifiers and information to numerous third parties. *Id.* ¶ 47.

## ARGUMENT

### Standard of Review

"[P]laintiffs' complaints … are taken as true and considered in the light most favorable to plaintiffs on a Rule 12(b)(6) motion to dismiss." *Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018). "[W]hen considering a motion to dismiss under Rule 12(b)(6), a court must draw all

---

[2] If, as Defendants suggest, there is no difference between the IBM Dataset and the DiF Dataset Dkt. 36 (Def. Mot. to Dismiss) at 5, n.3, then the Court can read these two terms interchangeably. In this brief, Plaintiff collectively refers to both datasets as the Biometric Dataset.

reasonable inferences in favor of the non-moving party." *Vesuvius USA Corp. v. Am. Commercial Lines LLC*, 910 F.3d 331, 334-35 (7th Cir. 2018).

## I. Illinois's Extraterritoriality Doctrine Does Not Bar Plaintiffs' Claims.

### A. Defendant Cannot Show at the Rule 12(b)(6) Stage that Plaintiffs' Claims Would Require an Extraterritorial Application of Illinois Law.

Defendant argues that the Complaint contains so few alleged connections to Illinois that its extraterritoriality doctrine commands that the Complaint fails as a matter of law. Dkt. 36 (Defs.' Mot. to Dismiss) at 8-11.[3] This argument has been rejected by every court that has considered it. *See, e.g.*, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1275-76 (9th Cir. 2019); *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100-02 (N.D. Ill. 2017); *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, *5-*7 (N.D. Ill. Sept. 15, 2017). Defendant's argument also ignores clear language in the leading Illinois case on extraterritoriality, *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801 (Ill. 2005), which emphasizes the highly fact-bound nature of the extraterritoriality inquiry. *Id.* at 854. The Seventh Circuit similarly has held that dismissal of a complaint on extraterritorial grounds is inappropriate at the Rule 12(b)(6) stage except in extraordinary circumstances that do not exist here. *See Morrison v. YTB Intern., Inc.*, 649 F.3d 533, 538 (7th Cir. 2011).

According to the Illinois Supreme Court, when a court is called upon to determine whether Illinois has sufficient nexus to a plaintiff's claim, a court must engage in a highly fact-bound inquiry. *Avery*, 835 N.E.2d at 854. In *Avery,* non-Illinois plaintiffs brought claims against an Illinois-based insurance company under Illinois' Consumer Fraud and Deceptive Business Practices Act, 805 ILCS § 505/2. *Id.* at 853-55. After determining that the statute only applied to transactions in Illinois, the court addressed whether the challenged transactions took place sufficiently in Illinois to avoid an extraterritorial application of Illinois law. *Id.* The court held that

---

[3] Citations are to the page number at the bottom of the brief, not the page of the docket entry number.

"a fraudulent transaction may be said to take place within a state if the circumstances relating to the transaction occur primarily and substantially within that state."[4] *Id.* at 853.

In reaching its holding, the court emphasized the importance of facts in determining where the key circumstances occurred: "we recognize that there is no single formula or bright-line test for determining whether a transaction occurs within this state. Rather, each case *must be decided on its own facts.*" *Id.* at 854 (emphasis added). The court then identified and analyzed those facts it considered especially important, including: (a) the location of the harm; (b) the residency of the plaintiff; (c) where communications between the parties took place; and (d) where the defendant carried out its policy. *See id.*; *see also Rivera*, 238 F. Supp. 3d at 1101. In *Avery*, the court was able to examine these facts because the case already had been tried. *Avery*, 835 N.E. at 810.[5]

Applying *Avery*, the Seventh Circuit has held that a district court simply does not have enough facts at the Rule 12(b)(6) stage to dismiss a case under Illinois' extraterritoriality doctrine unless the plaintiff's complaint "*defeats* application of Illinois law" on its face. *See Morrison,* 649 F.3d at 538 (emphasis in original). In *Morrison*, the Seventh Circuit reversed the dismissal of a complaint on extraterritorial grounds due to the factual issues that existed. *Id.* at 536-38. Where a complaint neither compels nor defeats the applicability of Illinois law, a district court is not entitled to resolve the ambiguity on the pleadings alone: "[The district court] did not take evidence, make findings of fact, or weigh the incommensurable factors in *Avery*'s formula; it was *not entitled* to do *any* of these things on a motion to dismiss the complaint." *Id.* (emphasis added).

---

[4] Plaintiffs note that this standard in *Avery* did not purport to apply to claims brought under all Illinois statutes, but rather followed from the court's attempt to "identify the situs of a consumer transaction" for purposes of the state consumer fraud statute. *Id.* at 853. As discussed below, Illinois might employ a somewhat different test in the context of claim brought under a personal privacy statute. *See* n.6, *infra*.

[5] In *Avery*, the Illinois Supreme Court decided against the consumer protection claims because the transactions involved non-resident plaintiffs with out-of-state injuries. 835 N.E.2d at 834. Here, the facts are the opposite—Plaintiffs are Illinois residents who have and will in the future suffer injury in Illinois, meaning the violation of Plaintiffs' rights occurred in Illinois.

Here, there is no factual record for the Court to weigh, and the Complaint does not defeat application of Illinois law on its face. Indeed, as set forth in detail below, the Complaint alleges numerous and significant connections between the challenged conduct and Illinois. *See § I.B, infra*. As such, under *Avery* and *Morrison*, the Court should deny Defendant's motion. Other courts who have addressed this same issue have reached this same conclusion. *See, e.g., Monroy,* 2017 WL 4099846, at *6 ("[The Defendant] may raise the argument at a later time, if and when the record affords a clearer picture of the circumstances relating to [the plaintiff's] claim."); *Rivera*, 238 F. Supp. 3d at 1102 (rejecting extraterritoriality claim where Plaintiff asserted violations as having occurred in Illinois).

**B.     The *Avery* Factors Support a Finding That the "Circumstances" of This Case Occurred "Primarily and Substantially" in Illinois.**

Even if the Court were to conduct an *Avery*-type analysis at this early stage, it still should deny Defendant's motion because the Complaint contains sufficient allegations to establish that Illinois law will apply. In *Avery*, the court found that the relevant circumstances occurred "primarily and substantially" within the state where: (a) plaintiffs resided; (b) the deception or "failure to disclose" occurred; and (c) the plaintiffs incurred their injury, among other factors.[6] 835 N.E.2d at 854. All three of these factors weigh in favor of finding that the relevant circumstances in this case occurred in Illinois.

The Complaint alleges that Plaintiffs resided in Illinois. Dkt. 19 ¶¶ 11-12. Moreover, Defendant's "failure to disclose" occurred in Illinois. In *Avery*, the court found that defendant's deceptive conduct occurred not where the relevant policies were devised, but where the plaintiffs "received" the incomplete (and therefore fraudulent) information. 835 N.E.2d at 854. It follows

---

[6] Because *Avery* concerned a consumer fraud statute, several of the factors relate to details of the transactional relationship between the plaintiff and defendant that are not relevant here, *e.g.*, where the plaintiffs' insurance estimates were written and where they received relevant brochures. *Id.*

that the "failure to disclose" information occurs in the location where the person would have received the information. Otherwise, a defendant could avoid Illinois's laws merely by withholding critical information from Illinois residents.

The Complaint alleges that Defendant made use of photographs that Illinois residents uploaded from Illinois and/or managed from their Illinois-based user accounts, computers, and mobile devices. Dkt. 19 ¶ 15. Had Defendant provided the requisite notice under BIPA, Plaintiffs would have received the information in Illinois.

Finally, Plaintiffs' injuries occurred in Illinois. By failing to comply with BIPA's notice and consent provisions, Defendant ensured that it could continue its unlawful use of Plaintiffs' and Class Members' highly sensitive biometric identifiers and information, subjecting the Illinois Plaintiffs and Class Members to irreparable and continuing privacy harms. While lack of notice is, itself, a complete claim under BIPA, *see* 740 ILCS § 14/15(b)(1), it is worth noting that lack of notice in Illinois is a key causal element in Defendant's ability to extract the biometrics anywhere because the process can proceed only while Plaintiffs are in the dark and unable to demand that it stop. Similarly, the injury to Plaintiffs' privacy interests certainly happens in Illinois where the damages plainly occur.

A recent Seventh Circuit case underscores this conclusion. *See Bryant v. Compass Group USA, Inc.*, 2020 WL 2121463 (7th Cir. May 5, 2020). In *Bryant*, the Seventh Circuit held that an alleged failure to abide by the § 15(b) notice and consent requirement of BIPA: (a) is "an invasion of [the plaintiff's] private domain, much like an act of trespass would be," *id.* at *6; and (b) results from a defendant withholding substantive information from a victim, thereby depriving the victim of his "ability to give the *informed* consent section 15(b) mandates," *id.* at *7 (emphasis in original). While the issue before the court related to the sufficiency of an injury-in-fact for Article

III standing purposes, the holding clarifies that the nature of the injury includes a lack of notice and loss of consent and, like a trespass, the injury occurs where it is experienced, in Illinois. *See id.*

Ignoring Plaintiffs' allegations and the law, Defendant contends that its New York ties demonstrate the extraterritorial nature of BIPA's application here. Dkt. 36 at 9. However, under *Avery*, there is nothing dispositive about those ties, some of which are not even alleged in the Complaint (*e.g.*, the location of relevant employees). *See Rivera*, 238 F. Supp. 3d at 1102 ("Even if we do definitely determine that the scanning takes places outside of Illinois, that would not necessarily be dispositive."). The court in *Avery* held that while "the place where a company policy is created or where a form document is drafted may be a relevant factor to consider … it does not follow" that such a place is where the circumstances of the disputed conduct "primarily and substantially" occurred. 835 N.E.2d at 854. Notably, in *Avery*, the court rejected the claim that the defendant's home state had the most nexus with the plaintiffs' claims. *Id.* at 854-55.

The *Avery* standard also defeats Defendant's argument that an Illinois resident's occasional conduct in other states (completely hypothetical at this stage of the litigation) defeats application of Illinois law. Dkt. 36 at 10 (hypothetical Illinois resident uploading a picture while traveling to California). *Avery* is concerned with the center of gravity—where the claims "primarily and substantially" occurred—not ancillary or insubstantial aspects of the dispute. *Avery*, 835 N.E.2d at 854. Furthermore, Defendant's hypothetical ignores the Complaint's allegations which make clear that Illinois Plaintiffs uploaded photos to their Flickr accounts from their computers in Illinois. Dkt. 19 ¶ 15. Regardless, at the Rule 12(b)(6) stage, Defendant's "elaborate hypothetical" is not enough to render any application of the statute invalid as a matter of law. *Rivera*, 238 F. Supp. 3d at 1103. Thus, for the reasons, set forth above, under *Avery*, these allegations preclude

application of the extraterritoriality doctrine. Moreover, the failure to give Plaintiffs the statutorily required notice logically could only have occurred where Plaintiffs are physically located, and it would certainly be in the fact finders' province to so decide. Lack of notice in itself is a complete claim.

To the extent Defendant is arguing that it would be too difficult to identify a facial image as belonging to an Illinois resident, or that unforeseen borderline cases would unfairly trigger BIPA liability, *see* Dkt. 36 at 13-14**,** the concern is both misplaced and premature. BIPA only applies to negligent, intentional, or reckless conduct. 740 ILCS § 14/20. As alleged, Defendant is at least negligent, *inter alia*, because it did absolutely nothing to even try to provide notice or protect Illinois photographs. The Flickr data provided to Defendant—which connected back to the originating Flickr accounts (*see* Dkt. 19 ¶ 40)—allowed Defendant to contact the account holders. Moreover, Plaintiff Vance's publicly-available Flickr page makes clear that he is an Illinois resident, stating in the "About" section: "My name is Steven and I've lived in Chicago since 2006."[7] Similarly, Plaintiff Janecyk's "About" section states: "The center of my world is a few miles south of Chicago."[8] The Court may take judicial notice of these facts.[9] And to the extent Defendant argues it could not have determined the residences of Plaintiffs and Class Members, Defendant views the pleading in the wrong light and applies the wrong inferences.

Perhaps discovery will show Defendant could have identified the residence of every person who appears in the Biometric Database, or perhaps there is a subset that will be clearly shown. The

---

[7] The "About" section of Plaintiff Vance's publicly available Flickr account page is available at https://www.flickr.com/people/jamesbondsv/ (last accessed on May 14, 2020).

[8] The "About" section of Paintiff Janecyk's publicly available Flickr account page is available at https://www.flickr.com/people/light_seeker/ (last accessed on May 14, 2020).

[9] "[C]ourts may take judicial notice of undisputed material hosted on a party's public website." *Newbold v. State Farm Mut. Auto. Ins. Co*, 2015 WL 13658554, at *4 n.7 (N.D. Ill. Jan. 23, 2015) (citing *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 944 n.3 (7th Cir. 2010)). The court can do so "without converting this Rule 12(b)(6) motion into a Motion for Summary Judgment." *Id.*

very earliest that the evidence should be weighed is at class certification, not a motion to dismiss. Likewise, a factfinder could determine that Defendant was negligent or reckless by not even trying to provide Illinois residents general published notice and a chance to check the Biometric Database for their photos. The specifics of what Defendant could or should have done are not appropriate for resolution at this time.

Finally, as Defendant concedes, Plaintiff Vance alleges at least one of the photographs in the Biometric Database is a photograph he uploaded from Illinois. Dkt. 19 ¶ 23. That is sufficient to avoid dismissal even under Defendant's incorrect and self-serving construction of the law. As such, the case must proceed past the pleading stage.

In any event, the location from which a photograph was uploaded does not change the *Avery* analysis, notwithstanding Defendant's contention to the contrary. Dkt. 36 at 9-10. As discussed above, the hypothetical situation Defendant describes contradicts the Complaint's allegations and is otherwise improper. *See Rivera*, 238 F. Supp. 3d at 1102. To the extent the situs of the upload is an important factor, because Plaintiffs uploaded the photos in Illinois, the factor weighs in favor of denying Defendant's motion.

## C. Defendant's Lack of a Business Relationship with Plaintiffs Does Not Change the Extraterritoriality Analysis.

Defendant seemingly contends that its lack of a business relationship with Plaintiffs and Class Members somehow means it can violate their BIPA rights with impunity. Dkt. 36 at 11. Acknowledging that existing authority has rejected its extraterritoriality argument (*id.*), Defendant attempts to distinguish the authority, noting that "in each case, the defendant engaged in some BIPA-relevant interaction with Illinois-based *users of its services*." *Id.* (emphasis added). The statute does not acknowledge Defendant's distinction between a voluntary user and an unknowing victim, and Illinois's extraterritoriality doctrine does not allow it either. Here, Defendant obtained

Plaintiffs' and Class Members' photographs that contained information about their origins (Dkt. 19 ¶¶ 40, 48) and obtained biometric data from those photographs without providing the necessary notice or obtaining the required consent. *See id.* ¶¶ 26, 46, 49. This is a straightforward violation of various BIPA provisions.

Nevertheless, Defendant seems to propose a *per se* rule, whereby an out-of-state corporation may pilfer the biometric data of Illinois residents, provided the residents did not do business with the corporation. Defendant's proposal has no basis in the law.

BIPA makes clear that private entities owe duties to individuals beyond their own "customers." Sections 15(b), 15(c), and 15(d) of BIPA all speak of the requirements a private entity must follow if it wants to use or otherwise handle "a *person's or a customer's* biometric identifier or biometric information." 740 ILCS §§ 14/15(b), 15(c), 15(d) (emphasis added.) The Illinois Supreme Court also stressed this aspect of the statute's reach multiple times in its seminal BIPA opinion. *See Rosenbach* 129 N.E. at 1206 (BIPA violation constitutes an "invasion, impairment, or denial of the statutory rights of any *person or customer*"); *id.* ("*individuals and customers*" have the right to control their biometric information"); *id.* at 1207 ("affected *individuals or customers*") (emphases added).

Defendant's proposed reading of the law also creates a perverse incentive to break it— approaching the plaintiffs for the statutorily-required consent establishes the user relationship that Defendant desperately tries to shirk. That is not a reasonable interpretation of the law, much less a remedial one. Compliance with the law cannot be a condition of the applicability of the law without inviting every regulated entity to create its own loophole by failing to comply.

Finally, the Seventh Circuit's recent *Bryant* decision also illustrates why Defendant's lack of a business relationship with Plaintiffs and Class Members makes the injuries it inflicted in

Illinois more serious, rather than exempting Defendant's privacy violations entirely from the reach of the statute. In *Bryant*, the Seventh Circuit held that an employee who used a fingerprint-activated vending machine without being notified that it was collecting biometric data was injured by being deprived of her right to make an informed decision about her biometric data. 2020 WL 2121463, at \*5-7. The court held that "[e]quipped with the missing information, she may have chosen not to use the vending machines …." *Id.* at \*7. Unlike the plaintiff in *Bryant*, Plaintiffs and Class Members had no inkling that Defendant was collecting, obtaining, disseminating, and profiting from their biometric data. As such, they had no ability to protect that data from Defendant's reach. And it is precisely that decision-making ability that BIPA seeks to protect.

## II. The Dormant Commerce Clause Does Not Prevent Illinois From Protecting Its Own Residents from Privacy Violations Perpetrated Online.

Defendant's contention that the Dormant Commerce Clause precludes Plaintiffs' claims (Dkt. 36 at 11-14) lacks merit. The Illinois Supreme Court has harmonized its extraterritoriality analysis with the constitutional restrictions of the Dorman Commerce Clause, and thus, the outcome is the same. The Dormant Commerce Clause "precludes the application of a state statute to commerce that takes place *wholly* outside of the State's borders, whether or not the commerce has effects within the state." *Rivera*, 238 F. Supp. 3d at 1103 (quoting *Healy v. Beer Inst., Inc.,* 491 U.S. 324, 336 (1989)) (internal quotation marks omitted) (emphasis added).

In the context of BIPA, courts have uniformly rejected the contention that, as a matter of law, the Dormant Commerce Clause prevents BIPA's application to out-of-state defendants that obtained the biometric identifiers and information of Illinois residents. *See In Re Facebook Biometric Info. Privacy Litig.* (the *"Facebook Litigation"*), 2018 WL 2197546, at \*4 (N.D. Cal., May 14, 2018) (denying cross-motions for summary judgment); *Rivera*, 238 F. Supp. 3d at 1102-04; *Monroy*, 2017 WL 4099846, at \*7-\*8. *Rivera* and *Monroy* emphasized—as with the Illinois

extraterritoriality issue—that it was premature to decide the issue at the Rule 12(b)(6) stage. *See Rivera,* 238 F. Supp. 3d at 1104; *Monroy,* 2017 WL 4099846, at *7-8. In *Rivera*, the court held that "this is not the stage at which to assess these arguments in detail …. Whether [BIPA] is nevertheless being summoned here to control commercial conduct wholly outside of Illinois is not possible to figure out without a better factual understanding of what is happening in [Defendant's] face-scan process." 238 F. Supp. 3d at 1104. In the *Facebook Litigation*, the court rejected defendant's Dormant Commerce Clause argument at the summary judgment stage, finding that it failed as a matter of law. 2018 WL 2197546, at *4.

Here, it is premature for the Court to determine whether Defendant's biometric data operation that affected thousands of Illinois residents took place "wholly" outside of Illinois. Because Plaintiffs' allegations are limited to the collection and use of the biometric data of Illinois residents—not the residents of any other states—Plaintiffs only seek to apply BIPA to Defendant's conduct vis-à-vis Illinois residents. This in no way impacts Defendant's conduct in any other state. Moreover, as discussed in the extraterritoriality context, Defendant cannot credibly contend that its conduct occurred wholly outside of Illinois; repackaging the same argument under the Dormant Commerce Clause fares no better. *See Facebook Litigation*, 2018 WL 2197546, at *4 ("Facebook's facial recognition program cannot be understood to have occurred wholly outside Illinois, and the same rather metaphysical arguments about where BIPA was violated fare no better when re-packaged under the dormant commerce clause."). The allegations, taken as true, are that Defendant collected the biometric data of thousands of unsuspecting Illinois residents (Dkt. 19 ¶¶ 4, 49, 58) and that allegation is controlling at this stage.

Relatedly, Defendant's claimed concerns about inconsistent regulations (Dkt. 36 at 12) are a red herring. As the Court in *Healy* held, "[g]enerally speaking, the Commerce Clause protects

against inconsistent legislation arising from the projection of one state's regulatory regime into the jurisdiction of another State." 491 U.S. at 336-37. BIPA does not operate in such a manner, as it only applies to Illinois residents. Nothing about BIPA prevents New York or any other state from continuing to permit unconstrained collection, distribution and use of its residents' biometric data. Defendant scanned the photos of Illinois residents who engaged in conduct within Illinois and under the protection of its laws. Indeed, this case does not even involve a conflict between the laws of New York and Illinois.

Notably, it is Defendant that seeks to have New York unlawfully regulate (supposedly by implication from silence) what businesses headquartered in New York can and cannot do to residents of Illinois. The Dormant Commerce Clause does not allow New York to "project[] … one state's regulatory regime into the jurisdiction of another State" in such a manner, which New York notably has not attempted to do. *Healy*, 491 U.S. at 336.

In reaching a contrary conclusion, Defendant rehashes its extraterritoriality arguments, with a focus on practical concerns. Dkt. 36 at 13-14. These arguments again fail. Defendant contends that "IBM (and other research institutions and universities using the YFCC100M database for facial recognition research) would be forced to stop this research if it were exposed to BIPA liability merely because the YFCC100M database might contain some small percentage of Illinois residents." *Id.* at 13. As discussed above, BIPA only imposes liability for negligent, reckless, or intentional violations. 740 ILCS § 14/20. Here, at minimum, the factfinder could decide that Defendant was negligent in failing to determine—or to undertake any effort to determine—whether it was performing facial geometric scans on the photographs of Illinois residents. Thus, contrary to Defendant's arguments, BIPA will not end all facial recognition research, it merely requires a company like Defendant to abide by Illinois residents' privacy rights.

In short, even if Defendant's arguments about the supposed practicalities can ever hold sway, they are certainly inappropriate at this stage before the factual record is developed.

Defendant's contention that Illinois residents account for only a "small percentage" of the total dataset (Dkt. 36 at 13-14) is not alleged in the Complaint and is otherwise unsupported. Regardless, the contention has no bearing on Defendant's Dormant Commerce Clause argument. The Dormant Commerce Clause does not allow Defendant to operate with impunity if it only violated the rights of (what it self-servingly deems) a "small" number or percentage of people. Nor does the self-selected nationwide scope of Defendant's conduct excuse it from complying with Illinois law. The Seventh Circuit has made clear that although the different state regulatory regimes may impose "serious compliance costs" on businesses that operate nationwide, that fact does not present a problem under the Dormant Commerce Clause. *Hirst v. SkyWest, Inc.*, 910 F.3d 961, 967 (7th Cir. 2018). If businesses like Defendant want to collect biometric data from a nationwide swath of individuals, they will have to learn to comply with different state privacy regimes, just as nationwide businesses have been doing in other industries for generations. *See id.*

The Dormant Commerce Clause cases cited by Defendant (Dkt. 36 at 12-13) are distinguishable and address situations that bear no resemblance to this case. In *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010), the Indiana statute in question purported to require Illinois lenders doing business in Illinois to obtain Indiana licenses if their customers lived in Indiana, even when all of the relevant interactions between the businesses and their customers took place in Illinois. *Id.* at 662. In this case, BIPA does not seek to regulate any discrete commercial transaction—let alone one occurring outside the state—but rather to prevent "an invasion of [an individual's] private domain" in Illinois and to ensure Illinoisans can make informed decisions in Illinois regarding the fate of their permanent, immutable biometric data.

*Bryant*, 2020 WL 2121463, at *6-7. Further, BIPA does not "exalt the public policy of one state over that of another," *Midwest Title Loans*, 593 F.3d at 668, because any other state can regulate access to its own residents' biometric data.

Similarly, there can be no serious contention that applying BIPA to Defendant's conduct would "over[ide] the domestic policy of other states," *Morrison*, 649 F.3d at 538, or that it would "stymie[]" or "trump" the legislative choices of less regulated states, *Morley-Murphy Co. v. Zenith Elecs. Corp.*, 142 F.3d 373, 379 (7th Cir. 1998). If other states wish to allow Defendant to harvest biometric data from the photographs of residents of their own states—BIPA leaves them free to do so.

Defendants' citations to dicta from non-Seventh Circuit cases about the Internet that were decided between 1997 and 2003 (*see* Dkt. 36 at 13) are similarly unavailing. The modern view is that states can regulate conduct that occurs entirely online without offending the Dormant Commerce Clause. The Supreme Court made this clear in *S. Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097-2100 (2018), which upheld against a Dormant Commerce Clause challenge a state law requiring online sellers with no physical presence in the state to collect and remit sales taxes. Overruling earlier precedent to the contrary, the Court found that given the social and economic changes of the "Cyber Age," it was no longer appropriate to use the Dormant Commerce Clause to "limit[] the lawful prerogatives of the States" by requiring that regulated entities have a physical presence. *Id.* at 2097. So too here: through BIPA, Illinois is exercising its sovereign prerogative to protect the privacy of its citizens.

### III. Scans of Facial Geometry Performed on Photographs Plainly Qualify as a "Biometric Identifier" for Purposes of BIPA.

Defendant further argues that "BIPA's plain language expressly excludes both photographs and information derived from photographs." Dkt. 36 at 14. But BIPA's plain text makes clear that

the limited photograph exception has nothing to do with Defendant's conduct. As such, the argument fails.

At issue is whether an individual or business falls under BIPA's purview when it uses a photograph to scan an individual's facial geometry and thereby obtain a biometric identifier. Every court that has addressed this question has found that BIPA applies to facial scans made from photographs, rejecting the categorical photograph exemption proposed by Defendant. *Rivera,* 238 F. Supp. 3d at 1092-1100; *Monroy,* 2017 WL 4099846, at \*2-\*5; *In re Facebook Biometric Info. Privacy Litig.,* 185 F. Supp. 3d 1155, 1171 (N.D. Cal. 2016). These holdings are in line with BIPA's definition of biometric identifier, which does not contain such an exception, 740 ILCS § 14/10, nor would such an exception make sense given the purpose of the statute—most if not all facial biometric information is taken from a photograph of a person's face, even if that photographic process exists only long enough for the computer to complete the scan.

*Rivera* contains the most extended discussion of the issue. After an exhaustive analysis of the statute and of the competing interpretations, the court found that the specific materials or methods used to perform a facial geometric scan—photograph or otherwise—were irrelevant to the definition of a biometric identifier. *Rivera*, 238 F. Supp. 3d at 1096. According to the court, "[t]he bottom line is that a 'biometric identifier' is not the underlying medium itself, or a way of taking measurements, but instead is a set of measurements of a specified physical component (eye, finger, voice, hand, face) used to identify a person." *Id*. The court then held that "there is no textual or structural clue to support" the notion that the exclusion of photographs from the definition of "biometric information" should mean that identifiers extracted from photographs are excluded *sub silencio* from the definition of a "biometric identifier." *Id.* In reaching this holding, the court observed that "[i]t would have been simple enough for the Illinois legislature to include similar

18

'based on' or 'derived from' language in the definition of 'biometric identifier,' but it did not ….
[T]he list of biometric identifiers are just that—specific, biology-based measurements used to
identify a person, without reference to how the measurements were taken." *Id.* at 1097. Defendant
provides no basis to stray from the reasoned analysis in *Rivera*.

Moreover, it would make no sense for a statute aimed at a fast-evolving technology to
create a gaping loophole for any measurements taken from photographs. *See, e.g, id.* at 1096
("Indeed, because advances in technology are what drove the Illinois legislature to enact [BIPA]
in the first place, it is unlikely that the statute sought to limit the definition of biometric identifier
by limiting *how* the measurements are taken. Who knows how iris scans, retina scans, fingerprints,
voiceprints, and scans of faces and hands will be taken in the future?) (emphasis added); *Monroy*,
2017 WL 4099846, at \*5 (interpreting the statute to mean in-person scans would "would leave
little room for the law to adapt and respond to technological development").[10]

Defendant's attempt to derive an atextual "in-person" requirement from BIPA's illustrative
list of covered situations (Dkt. 36 at 16) is also misplaced. Defendant argues that because the
legislative findings in BIPA mention "biometric identifier-facilitated transactions," including "at
grocery stores, gas stations, and school cafeterias," the statute only applies to "in-person activities"
and not photographs. *Id*. This strained interpretation ignores the plain language of § 15 of BIPA,
the section Plaintiffs allege Defendant violated. That section makes clear that any private entity
that, among other things, obtains, disseminates, discloses, or rediscloses biometric identifiers or
information without providing the requisite notice or obtaining the requisite consent has violated
the statute. *See* 740 ILCS § 14/15. Moreover, courts have rejected Defendant's made-up "in-

---

[10] In addition to scans of facial geometry, fingerprints and retinal scans can both be obtained from
photographs, a fact the court in *Monroy* cited as support for its holding that the Illinois legislature could not
have meant to limit "biometric identifiers" to situations in which the data is collected in person. *Monroy*,
2017 WL 4099846, at \*4.

person" requirement. *See Monroy*, 2017 WL 4099846, at \*4 (the court was "unconvinced by [the defendant's] insistence that BIPA is narrowly concerned with the use of biometric data in the context of commercial transactions" given the statute's "notably broad" definition of "private entity"); *Rivera*, 238 F. Supp. 3d at 1098 (emphasis in original) ("To be sure, the only *example* given in Section 5 relates to in-person transactions … but the stated concern is considerably broader than this one application.").

Ultimately, Defendant's reading of BIPA would create an exception so sweeping that it would swallow the rule—allowing companies like Defendant to harvest biometric data from any photograph of any Illinois resident wherever found. Defendant's interpretation would transform BIPA into a statute that specifically permits anyone—without notice or consent—to obtain, disclose, sell, or otherwise profit off of any biometric measurements so long as they are extracted from photographs. As the Seventh Circuit has emphasized, "[a] federal court should not read a state law in a way that makes it self-defeating." *Morrison*, 649 F.3d at 538. The court should decline Defendant's invitation to turn BIPA into a license for unconstrained biometric data extraction.

In making the above arguments, Plaintiffs note that they do not contest that BIPA does not apply to actual photographs. *See* 740 ILCS § 14/10. Thus, a person's or company's mere possession, collection, or distribution of a photograph does not violate BIPA. Someone who posts a photo of a family member on Facebook, sends out photos of a party on an email list-serve, or otherwise possesses photographs does not run afoul of BIPA. Moreover, Plaintiffs do not dispute that BIPA's definition of "biometric information" excludes information gleaned from something other than a biometric identifier (including a photograph). *Id.* Nothing about these facts allows Defendant to obtain biometric identifiers from photographs. Indeed, the statute makes clear that

"biometric information" includes "any information … based on an individual's biometric identifier." *Id.*

## IV. Defendant Was Unjustly Enriched When It Profited from Its Unlawful Activity to Plaintiffs' Detriment.

In support of its unjust enrichment claim, Plaintiffs allege that Defendant unfairly profited from its illegal capture and use of Plaintiffs' protected biometrics when it used them to develop, improve, and sell its own facial recognition technology. Dkt. 19 ¶¶ 3-6. Plaintiffs also allege that Defendant's same conduct giving rise to its enrichment was to Plaintiffs' and Class Members' detriment when the conduct caused them immediate and specific informational injuries, economic injuries, privacy injuries, and other harms affecting their day-to-day lives. *Id.* ¶¶ 8-9, 55-57.

"Economic expense" is not a pleading element of unjust enrichment. Plaintiffs have satisfied all of the *actual* pleading requirements: that the "[defendant] has unjustly retained a benefit to [the plaintiff's] detriment and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Mabry v. Standard Industries, Inc.*, 2020 WL 2112372, at *5 (N.D. Ill. May 4, 2020). Defendant was unjustly enriched when it illegally obtained Plaintiffs' biometrics and profited therefrom. Moreover, Defendant's wrongful enrichment was plainly to Plaintiffs' and Class Members' corresponding detriment when Defendant's actions: (a) deprived them of their right to be informed of and control the use of their biometrics (which is distinct from a privacy harm); (b) put them at an increased risk of identity theft, social engineering, and other kinds of fraud of economic injury; (c) caused them privacy harms; and (d) caused them to stop participating in biometric-facilitated transactions and other facially-mediated electronic participation. Dkt. 19 ¶¶ 8-9, 55-57.

In *Bryant*, 2020 WL 2121463, at *7, the Seventh Circuit recently held that violations of Section 15(b) of BIPA resulted in *informational and economic* harm that is both concrete and

particularized. Although Defendant would have this Court believe the harms at issue are limited to privacy harms, the heart of BIPA was to prevent injury to the use of sensitive personal information—that is, Defendant's failure to inform Plaintiffs and receive their consent impaired Plaintiffs' ability to use their biometric information as the statute envisioned. *Id*. at \*6. "The judgment of Illinois's General Assembly is that the sensitivity of biometric information and the risk of identity theft or other privacy *or economic* harm that may result from its dissemination, necessitates that people be given the opportunity to make informed choices about to whom and for what purpose they will relinquish control of that information." *Id*. at 7 (emphasis added). The Illinois Supreme Court and Ninth Circuit have likewise recognized that the serious economic and informational harm are much different than the minimal privacy concerns implicated in Defendant's authority.[11] *See Patel v. Facebook, Inc.*, 290 F. Supp. 3d 948, 954 (N.D. Cal. 2018) (abrogation of procedural rights mandated by BIPA "are worlds away from the trivial harm of a mishandled zip code or credit card receipt," and "are 'unlike other unique identifiers,' such as 'social security numbers,' because those 'when compromised, can be changed"); *Rosenbach*, 2019 IL 123186, ¶¶ 35-38. Plaintiffs have alleged a detriment connected to Defendant's unjust enrichment, and anything more presents questions of fact inappropriate for resolution at the Rule 12(b)(6) stage. *Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 856 (N.D. Ill. 2006).

Defendant does not cite a single case requiring a plaintiff to have sustained a monetary "economic expense." In *Stevens v. Interactive Financial Advisors, Inc.*, 2015 WL 791384, at \*16 (N.D. Ill. Feb. 24, 2015), for example, the court merely noted in *dicta* that the law imposes "an

---

[11] As has the Illinois legislature. 740 ILCS § 14/5 (c)-(e) ("Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions[,]" and "[a]n overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.").

obligation upon the defendant to repay a benefit that it obtained at the plaintiff's expense, even in situations where the defendant does not owe a contractual duty to repay [,]" and used "at the plaintiff's expense" interchangeably with "detriment." *Id*. at *15-*16. In *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1130 (W.D. Wash. 2012), the court based its ruling on privacy concerns posed by the defendant's collection of location data from the plaintiff's phone, and did not have opportunity to consider the unique informational and economic injury present here, as explained by the Seventh and Ninth Circuits and the Illinois Supreme Court. *See supra*.

This Court should reject Defendant's invitation to be the first and only court to hold that unjust enrichment claims categorically fail when based on BIPA violations, particularly in light of authority affirming unjust enrichment claims with respect to the use of personal information that is less sensitive than Plaintiffs' biometrics. *See Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 875-76 (E.D. Mich. 2017) (collecting authority and rejecting argument that plaintiffs "lost nothing of value" when defendants unlawfully disclosed their personal information and made and retained profit by selling information); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 643 (E.D. Mich. 2017) (upholding unjust enrichment on two theories, including that defendant violated statute by unlawfully disclosing personal information it received via reader subscriptions); *Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172, 199 (S.D.N.Y. 2017) (denying summary judgment against unjust enrichment when "[d]efendant received a benefit from Plaintiff in the form of subscription fees and *personal information*" and received compensation to disclose same").

Nor is there a requirement that Plaintiffs allege they had a reasonable expectation for payment from Defendant. In support, Defendant miscites *Sunny Handicraft Ltd. V. Envision This!, LLC*, 2015 WL 231108, at *4 (N.D. Ill. Jan. 16, 2015), in which the plaintiff tried and failed to plead an expectation of payment from the defendant as an exception to the rule that Illinois courts

do not impose a quasi-contract upon third parties when they receive the benefit from plaintiff's agreement with another party. Because this case is not about a benefit Defendant received from Plaintiffs' contract with another party, Plaintiffs need not satisfy an exception to a rule that does not apply. *Motorola, Inc. v. Lemko Corp.*, 2010 WL 960348, at *5 (N.D. Ill. Mar. 15, 2010), is likewise inapplicable. There, the court merely found that a service rendered gratuitously (where the plaintiff offered to help his spouse without receipt of payment) cannot give rise to unjust enrichment because the enrichment was intentional and without expectation of payment.[12] This is entirely inapplicable to Plaintiffs' claims that Defendant took and profited from their biometrics, without their knowledge or consent, and in doing so caused related informational, economic, privacy, and other harms to Plaintiffs.

To the extent Defendant argues that Plaintiffs' unjust enrichment claim should be dismissed because their BIPA claims fail, Plaintiffs respond that their unjust enrichment claim cannot be dismissed for the same reasons their other claims are well-pled, as elaborated *supra*.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant IBM's motion to dismiss in its entirety. However, in the event the Court grants any portion of the motion, the Court should grant Plaintiffs leave to replead.

---

[12] Defendant's citation to *Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016), is equally inapposite. There, the court found there was no standing for a plaintiff's claims under the Privacy Act, Administrative Procedure Act, and the Internal Revenue Code because the disclosed non-biometric taxpayer information had no independent monetary value. The court's finding only underscores the unique informational, economic, and privacy harms associated with BIPA violations, and, to the extent it can be said to apply to protected biometric information, is at odds with the Seventh Circuit's findings of harm in *Bryant*, 2020 WL 2121463, at *7.

**CERTIFICATE OF SERVICE**

I, Scott R. Drury, an attorney, hereby certify that, on May 14, 2020, I filed the foregoing

document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Scott R. Drury
*One of Steven Vance's Attorneys*