# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| STEVEN VANCE and TIM JANECYK, for themselves and others similarly situated, | |
| Plaintiffs, | |
| | Case No. 1:20-cv-00577 |
| v. | |
| | Hon. Charles P. Kocoras |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York Corporation, | |
| | Magistrate Judge Gabriel A. Fuentes |
| Defendant. | |

## DEFENDANT IBM'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ......................................................................................................................2

I.      PLAINTIFFS' BIPA CLAIMS SHOULD BE DISMISSED ............................................2

      A.      Plaintiffs' BIPA Claims Are Barred By The Extraterritoriality Doctrine ..............2

              1.      The SAC Does Not Allege Facts Sufficient To Establish That IBM's Conduct Occurred "Primarily And Substantially" In Illinois..........2

              2.      Courts Hold That The Extraterritoriality Inquiry Is "Fact-Bound" Only Where, Unlike Here, The Complaint Alleges That The Defendant Engaged In Substantial Conduct In Illinois..............................5

      B.      Plaintiffs' BIPA Claims Are Barred By The Dormant Commerce Clause.............9

      C.      BIPA Does Not Apply To IBM's Analysis Of Photos .........................................12

II.     PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.............14

CONCLUSION.................................................................................................................15

**Cases**

*Am. Booksellers Found. v. Dean*,
  342 F.3d 96 (2d Cir. 2003)............................................................. 11

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  835 N.E.2d 801 (Ill. 2005) ...................................................... 1, 3, 5, 8

*Boelter v. Hearst Comm'ns, Inc.*,
  269 F. Supp. 3d 172 (S.D.N.Y. 2017)............................................. 15

*Bryant v. Compass Group USA, Inc.*,
  2020 WL 2121463 (7th Cir. May 5, 2020) ............................ 6, 13, 14, 15

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) ......................................................... 14

*Cousineau v. Microsoft*,
  992 F. Supp. 2d 1116 (W.D. Wash. 2012).................................... 14

*Healy v. Beer Institute, Inc.*,
  491 U.S. 324 (1989)..................................................................... 1, 10

*Hirst v. Skywest, Inc.*,
  910 F.3d 961 (7th Cir. 2018) ......................................................... 11

*Moeller v. Am. Media, Inc.*,
  235 F. Supp. 3d 868 (E.D. Mich. 2017)......................................... 15

*Monroy v. Shutterfly, Inc.*,
  2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ................................. 7

*Morrison v. YTB Intern., Inc.*,
  649 F.3d 533 (7th Cir. 2011) ......................................................... 6

*Motorola, Inc. v. Lemko Corp.*,
  2010 WL 960348 (N.D. Ill. Mar. 15, 2020)................................... 15

*Obi v. Chase Home Fin., LLC*,
  2012 WL 1802450 (N.D. Ill. May 15, 2012) ................................. 15

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) ................................................... 7, 15

*Perlin v. Time Inc.*,
  237 F. Supp. 3d 623 (E.D. Mich. 2017)......................................... 15

*PSINet, Inc. v. Chapman*,
  362 F.3d 227 (4th Cir. 2004) ......................................................... 11

*Rasmusson v. Chisago County*,
    991 F. Supp. 2d 1065 (D. Minn. 2014) .............................................................. 13

*Rivera v. Google, Inc.*,
    366 F. Supp. 3d 998 (N.D. Ill. 2018) ................................................................ 13

*Rivera v. Google, Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. Sept. 15, 2017) ............................................. 3, 7

*Rose v. Nat'l Collegiate Athletic Ass'n*,
    346 F. Supp. 3d 1212 (N.D. Ill. 2018) .............................................................. 15

*Rosenbach v. Six Flags Entm't Corp.*,
    2019 IL 123186 ................................................................................................. 15

*S. Dakota v. Wayfair, Inc.*,
    138 S. Ct. 2080 (2018) ...................................................................................... 12

*Sunny Handicraft v. Envision This!, LLC*,
    2015 WL 231108 (N.D. Ill. Jan. 16, 2015) ....................................................... 15

# PRELIMINARY STATEMENT

If Flickr (a California company) had conducted facial scans of its Illinois users' photos, and Plaintiffs had sued Flickr, perhaps the extraterritoriality doctrine and the dormant Commerce Clause would not bar their claims. That is the factual scenario in *every* case Plaintiffs cite that allowed BIPA claims against an out-of-state defendant to proceed past the motion to dismiss stage. But Plaintiffs have sued IBM, not Flickr, and their Second Amended Complaint ("SAC") does not allege that IBM engaged in a *single* relevant act in Illinois. The best Plaintiffs can do is allege that, *after* (1) Plaintiffs and other Illinois Flickr users posted their photos *online*, and (2) Yahoo compiled those photos in a publicly available *online* database, researchers at IBM—a New York corporation headquartered in Armonk, New York, SAC ¶¶ 4, 13—downloaded and analyzed the faces in some of those photos. Downloading and analyzing photos *from the Internet*, however, does not amount to conduct *in Illinois*—even if Illinois residents appear in the photos.

Because Plaintiffs do not allege a factual basis for inferring that IBM engaged in any relevant conduct in Illinois, application of BIPA to IBM's out-of-state conduct would violate: (1) Illinois' extraterritoriality doctrine, which limits BIPA's application only to conduct that occurs "primarily and substantially in Illinois," *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005); and (2) the dormant Commerce Clause, which proscribes application of state statutes in such a manner that "the practical effect of the regulation [would be] to control conduct beyond the boundaries of the State," *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 336 (1989). Plaintiffs' contention that it is "premature" to dismiss their BIPA claims because "every court to address the issue has found that neither the Illinois extraterritoriality doctrine nor federal constitutional law puts [IBM's] conduct outside of BIPA's reach" (Opp. 1), is incorrect and not supported by the cases Plaintiffs cite because each of those cases involved allegations of substantial conduct by the defendant *in Illinois*. Such allegations are noticeably absent here.

Plaintiffs' BIPA claims should also be dismissed because BIPA does not apply to scans of photos of faces. The statute's plain language expressly excepts both photos and information derived from photos. IBM acknowledges that courts in this district have held otherwise, but respectfully contends that the decisions on this issue were wrongly decided.

Plaintiffs' related unjust enrichment and injunctive relief claims should also be dismissed for the reasons explained *infra* in section II.

## ARGUMENT

## I. PLAINTIFFS' BIPA CLAIMS SHOULD BE DISMISSED

### A. Plaintiffs' BIPA Claims Are Barred By The Extraterritoriality Doctrine

#### 1. The SAC Does Not Allege Facts Sufficient To Establish That IBM's Conduct Occurred "Primarily And Substantially" In Illinois

The SAC does not contain sufficient allegations that, taken as true, would provide a basis for holding IBM liable under Illinois law. As IBM explained in its opening brief, "[a]lthough Plaintiffs and the putative class members allegedly are Illinois residents, they do not allege that they uploaded photos to IBM servers, used IBM software, services, or technology, or that they ever had any communications or interactions with IBM," "[n]or do Plaintiffs allege that any of IBM's actions in violation of BIPA … was conducted in Illinois." Dkt. No. 36, at 7. Plaintiffs nevertheless contend that their failure to allege *any* conduct by IBM in Illinois is irrelevant because four other purported "factors … weigh in favor of finding that the relevant circumstances in this case occurred in Illinois." Opp. 7. None of Plaintiffs' purported "factors," alone or in combination, establishes the requisite nexus between the conduct complained of and Illinois.

*First*, Plaintiffs contend that "the Complaint alleges that Plaintiffs resided in Illinois." Opp. 7. But as IBM demonstrated in its opening brief: "BIPA … does not purport to protect Illinois residents from conduct that occurs outside of Illinois' borders." Dkt. No. 36, at 10. The statute

"applies only to conduct that occurs 'primarily and substantially' in Illinois." *Id*.; *see also Avery*, 835 N.E.2d at 854; *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. Sept. 15, 2017) (BIPA "was not intended to and does not have extraterritorial application" and, accordingly, the Illinois-resident plaintiffs' "asserted [BIPA] violations … *must have taken place in Illinois* for them to win") (emphasis added). Plaintiffs' Illinois residency alone is plainly insufficient.

*Second*, Plaintiffs contend that IBM's alleged "'failure to disclose' [in accordance with BIPA] occurred in Illinois" because that is where they reside and allegedly were entitled to receive notice. Opp. 7. This argument rests on circular and faulty logic. Plaintiffs essentially contend that the Court should find that BIPA applies to IBM's out-of-state conduct *because* IBM did not comply with BIPA. That puts the cart before the horse. Plaintiffs must first allege a sufficient nexus between IBM's out-of-state conduct and Illinois before they can argue that IBM "failed" to comply with BIPA "in Illinois."

Plaintiffs' reliance on *Avery* for the proposition that "the 'failure to disclose' information occurs in the location where the person would have received the information" (Opp. 7-8), is misplaced. In *Avery*, the Illinois defendant sent a document containing an allegedly fraudulent omission *directly* to the non-Illinois resident class members. 835 N.E.2d at 854. The court held that the fact that the non-Illinois resident class members "received" that communication *outside* of Illinois was relevant to its decision *not* to apply the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") extraterritoriality to the non-resident class members' claims. *Id.*

Here, by contrast, Plaintiffs do not allege that they "received" a deficient BIPA notice (or any other communication) from IBM while they were residing in Illinois—they do not allege that IBM communicated or interacted with them *at all*. Accordingly, *Avery* does not support Plaintiffs'

argument that IBM's alleged "failure" to act in Illinois establishes that its conduct occurred "primarily and substantially in Illinois."

*Third*, Plaintiffs contend that the photos were "uploaded from Illinois and/or managed from their Illinois-based user accounts, computers, and mobile devices." Opp. 8. Even if this argument were fully supported by the allegations in the SAC—and it is not[1]—Plaintiffs and the putative class members allegedly uploaded their photos *to Flickr*, not to IBM, using "Illinois-based [Flickr] user accounts." Opp. 8. IBM is several steps removed from Plaintiffs' interactions with Flickr, having allegedly obtained the photos only *after* (1) Plaintiffs posted the photos on Flickr's website, and (2) Yahoo collected the photos from Flickr and compiled them in a publicly available online database. SAC ¶ 40. Accordingly, Plaintiffs' Illinois-based interactions with Flickr cannot establish that IBM's conduct occurred "primarily and substantially in Illinois."

*Fourth*, Plaintiffs contend that their "injuries occurred in Illinois" when IBM allegedly "fail[ed] to comply with BIPA's notice and consent provisions." Opp. 8. Plaintiffs can be said to be "injured," however, only to the extent that BIPA *applies* to IBM's out-of-state conduct; if it does not, Plaintiffs were not entitled to notice and consent and therefore they have not been "injured" (in Illinois, or anywhere else). Thus, on the threshold question of whether BIPA applies to IBM's out-of-state conduct, Plaintiffs simply assume it does in order to postulate an "injury" that allegedly occurred in Illinois, where they reside. Again, Plaintiffs put the cart before the horse.

In sum, all of the "factors" that Plaintiffs claim weigh in favor of extending BIPA to IBM's out-of-state conduct are extrapolated from their Illinois residence—Plaintiffs contend that they were entitled to receive notice and provide consent in Illinois because that is where they reside,

---

[1]  The SAC does not allege that the putative class members "uploaded" their photos from Illinois— nor even that Janecyk did. The proposed class purports to cover "[a]ll Illinois residents whose faces appear in the IBM Dataset," *regardless* of where the photos were uploaded. SAC ¶ 58.

and they were "injured" in Illinois, where they reside, when IBM allegedly failed to provide the purportedly required notice here. Opp. 7-9. The best Plaintiff can come up with to establish that *IBM* did anything relevant in Illinois is to argue that IBM *failed* to do something allegedly required by Illinois law. As explained further in the next section, Plaintiffs cite no case holding that a defendant's mere *failure to act* in Illinois is sufficient to establish that the defendant's conduct occurred "primarily and substantially in Illinois."

2. **Courts Hold That The Extraterritoriality Inquiry Is "Fact-Bound" Only Where, Unlike Here, The Complaint Alleges That The Defendant Engaged In Substantial Conduct In Illinois**

Plaintiffs erroneously contend that courts have "emphasize[d] the highly fact-bound nature of the extraterritoriality inquiry," and "held that dismissal of a complaint on extraterritoriality grounds is inappropriate at the Rule 12(b)(6) stage except in extraordinary circumstances." Opp. 5. None of the cases Plaintiffs cite has articulated such a standard; to the contrary, the cases confirm that the extraterritoriality doctrine requires allegations of a substantial nexus between the defendant's conduct and Illinois—allegations that are not present here.

Plaintiffs' reliance on *Avery* (Opp. 5-6) is particularly misguided. In *Avery*, notwithstanding the fact that the defendant, State Farm Insurance, was "headquartered" in Illinois and allegedly perpetrated the scheme to defraud both Illinois and non-Illinois-resident customers alike through a policy allegedly devised at its Illinois headquarters, the Illinois Supreme Court held that ICFA could *not* be applied extraterritorially to claims asserted by out-of-state plaintiffs (such as Avery, a Louisiana resident) because their "contact with State Farm was through a Louisiana agent, a Louisiana claims representative, and a Louisiana adjuster." 835 N.E.2d at 839, 854. *Avery* thus demonstrates the Illinois Supreme Court's reluctance to apply Illinois statutes extraterritorially where the conduct complained of occurred "primarily and substantially" *outside* of Illinois and connected to Illinois only through intermediary channels. *Id.*

Plaintiffs' reliance (Opp. 5-6) on *Morrison v. YTB Intern., Inc.*, 649 F.3d 533 (7th Cir. 2011), is similarly misplaced. Indeed, *Morrison* provides a striking point of contrast to the sheer lack of allegations connecting IBM's conduct and Illinois here. Similar to *Avery*, the plaintiff class in *Morrison* consisted of both Illinois and non-Illinois residents asserting ICFA claims against YTB International, "*a firm based in Illinois*." *Id.* at 534 (emphasis added). As in *Avery*, the question in *Morrison* was whether ICFA could be applied to the claims of the non-Illinois-resident class members. In holding that "the complaint does not *defeat* application of Illinois law" to the non-resident class members' claims, the court noted that:

> The[] complaint alleges that [plaintiffs] dealt *directly* with YTB, which does business *in Illinois*, and that all of the travel-agency deals were executed *in Illinois*—or at least "accepted" by YTB *in Illinois* after being placed over the Internet. YTB required every plaintiff to sign a contract that provides for litigation *in Illinois under Illinois law*…. Plaintiffs also allege that their payments were sent to YTB *in Illinois*, and that any payments from YTB when they secured other agents (a vital part of a pyramid scheme) came *from Illinois*. They assert that any complaints had to be sent to YTB *in Illinoi*s and were resolved by it *in Illinois*. Unlike State Farm [in *Avery*], YTB does not have offices or representatives in other states; *the only way to deal with YTB is through its headquarters in Illinois*. YTB also conducted training sessions, regional meetings, and "red carpet days" for members of the plaintiff class *in Illinois*.

*Id.* at 537-38 (first emphasis in original; subsequent emphases added). The contrast between the complaint in *Morrison* and the SAC here could not be more stark.

Nor does *Bryant v. Compass Group USA, Inc.*, 2020 WL 2121463 (7th Cir. May 5, 2020) (Opp. 8-9), support Plaintiffs' argument. In *Bryant*, the plaintiff "worked for a call center *in Illinois*" and alleged that the finger-scan-operated vending machines installed in the Illinois call center's cafeteria violated BIPA. *Id.* at *1 (emphasis added). The sole question before the court was "whether, for federal-court purposes, such a person has suffered the kind of injury-in-fact that supports Article III standing." *Id.* In holding that such standing exists, the court did not address the extraterritoriality doctrine or any other issues relevant to this case.

6

The only cases that Plaintiffs cite (Opp. 5) concerning the extraterritorial application of BIPA are the cases that IBM cited in its opening brief as *points of contrast* with this case on the extraterritoriality and dormant Commerce Clause issues—*i.e.*, *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017), *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017), and *Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019). *See* Dkt No. 36, at 10-11 & n.8. As IBM explained: "in each case, the photo was allegedly uploaded to the *defendants' systems* from a computer or device located in Illinois" and each defendant allegedly "engaged in some BIPA-relevant interaction with Illinois-based users of its services. Here, by contrast, Plaintiffs are *Flickr* users, not *IBM* users, and Plaintiffs do not allege that they ever interacted with IBM (in Illinois, or anywhere else)." *Id.* at 11.

Plaintiffs' only response to this critical distinction is to argue—erroneously—that "[IBM] seemingly contends that its lack of a business relationship with Plaintiffs and Class Members somehow means it can violate their BIPA rights with impunity." Opp. 11. But it is not the lack of a "business relationship" that is important; it is the fact that IBM is not alleged to have interacted with Plaintiffs *at all*. Unlike IBM here, Google, Shutterfly, and Facebook made their photo-sharing products and services available in Illinois, recruited Illinois users of those products and services, and *directly interacted* with the users whose faces the defendants scanned. The defendants could reasonably expect that their conduct vis-à-vis *their own Illinois users* would be governed by Illinois law, including BIPA. IBM, by contrast, obtained Plaintiffs' photos *not* through Illinois contacts but by downloading the photos from a database that Yahoo made publicly available *online*. None of Plaintiffs' cases supports extending BIPA to IBM's out-of-state conduct under these circumstances.

Nor is there any merit to Plaintiffs' argument that BIPA should be extended to IBM's out-of-state conduct because IBM theoretically *could* have "contacted the [Flickr] account holders" given that, allegedly, "[t]he Flickr data provided to [IBM] … connected back to the originating Flickr accounts." Opp. 10. Because Plaintiffs do not allege that IBM's conduct occurred "primarily and substantially in Illinois," BIPA does not apply and therefore IBM was not obligated to engage in the detective work that Plaintiffs propose. Moreover, Plaintiffs purport to represent a class of "Illinois residents *whose faces appear* in the IBM Dataset," SAC ¶ 58 (emphasis added), which class does not neatly overlap with the Flickr "account holders" who took and/or posted the photos online, and whose faces may not appear in the photos. Given Plaintiffs do not allege that the posted images included the names or any other contact information of the individuals who *appear* in the images, there is no basis for inferring that IBM could have identified the putative class members or their residence even if it were obligated to do so under Illinois law (which it was not).

As Plaintiffs would have it, no entity, *no matter where in the world it is located*, may perform facial scans of publicly available online photos unless it first (1) confirms that the individuals in the photos are not Illinois residents, or (2) somehow identifies the Illinois residents and complies with BIPA's notice and consent requirements. That is an impossible standard that, if adopted, would extend BIPA's reach well beyond Illinois's borders to everywhere the Internet is available—including to states like New York that have affirmatively decided *not* to regulate the conduct at issue, *see* Dkt No. 36, at 12-13—in violation of the "long-standing rule of construction in Illinois which holds that a 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery*, 835 N.E.2d at 852. BIPA

indicates no such intent and therefore the Court should not extend BIPA in the manner Plaintiffs propose.

### B. Plaintiffs' BIPA Claims Are Barred By The Dormant Commerce Clause

Plaintiffs argue that their BIPA claims cannot be dismissed under the dormant Commerce Clause because it purportedly is "premature" for the Court to determine whether IBM's alleged conduct in violation of BIPA occurred "'wholly' outside of Illinois." Opp. 14. But it not premature because, as demonstrated above, Plaintiffs do not allege that IBM engaged in a *single* relevant act *in Illinois*.

Unlike the cases on which Plaintiffs rely (Opp. 13-14), here, there is no need for discovery to evaluate *how much* or *which aspects* of IBM's conduct occurred within Illinois as opposed to out-of-state.[2] Plaintiffs do not allege that IBM engaged in *any conduct* in Illinois. The best Plaintiffs can do is allege that IBM obtained and scanned their photos after (1) they posted the photos *online* at Flickr.com, and (2) Yahoo compiled the Flickr photos (from Flickr users around the world) in a publicly available online database. But downloading photos of Illinois residents *from the Internet* does not amount to conduct *in Illinois*. On the facts alleged, applying BIPA to IBM's out-of-state conduct would violate the dormant Commerce Clause.

---

[2] In *In re Facebook Biometric Info. Privacy Litig.*, for example, the court rejected Facebook's extraterritoriality and dormant Commerce Clause arguments where Facebook made its social media website available to Illinois users and "[t]his lawsuit is under an Illinois state statute on behalf of Illinois residents *who used Facebook in Illinois*." 2018 WL 2197546, at *4 (N.D. Cal. May 14, 2018) (emphasis added). Similarly, in *Rivera*, the plaintiffs alleged that Google sold the Google Droid device on which the photos of plaintiffs' faces were taken "in Illinois," and those devices "automatically uploaded" the photos "*to Google Photos*," a service which Google offered to Illinois residents and which scanned the photos. 238 F. Supp. 3d at 1091 (emphasis added). And *Monroy* involved facial scans conducted by Shutterfly on "a photograph uploaded to *Shutterfly's* website from within the state of Illinois." 2017 WL 4099846, at *2 (emphasis added). Thus, unlike IBM here, in each case Plaintiffs cite, the defendant made relevant products and services available in Illinois and directly interacted with Illinois users of those products and services.

The Supreme Court's decision in *Healy v. Beer Institute, Inc.* lays out the constitutional parameters against which Plaintiffs' claims must be tested:

> Taken together, our cases concerning the extraterritorial effects of state economic regulation stand at a minimum for the following propositions: First, the Commerce Clause ... precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State .... Second, a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature. *The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State*.... Third, the practical effect of the statute must be evaluated not only by considering the consequences of the statute itself, but also by considering how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation. Generally speaking, the Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State.... And, specifically, the Commerce Clause dictates that no State may force an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another.

491 U.S. 324, 336-37 (1989) (emphasis added; quotation marks and internal citations omitted).

Plaintiffs' claims would violate every one of these constitutional strictures. Indeed, Plaintiffs are not shy about what they believe is required of out-of-state entities and institutions performing facial recognition research on publicly available online photos—according to Plaintiffs, such out-of-state entities must "undertake an[] effort to determine [] whether [they] are performing facial geometric scans on the photographs of Illinois residents." Opp. 15. Even if this were *possible*—and the SAC does not contain any allegations from which such a possibility might be inferred, given that Plaintiffs do not allege the photos at issue contained the residency or contact information of the individuals in the photos—there can be no genuine dispute that interpreting BIPA to require out-of-state companies to "undertake [the] effort" Plaintiffs propose would have the "practical effect" of "controlling conduct beyond the boundaries of the state," in violation of the Constitution. *See Healy*, 491 U.S. at 336; *see also Am. Booksellers Found. v. Dean*, 342 F.3d

96, 99, 104 (2d Cir. 2003) (Vermont law that "extended to internet communications" a "prohibition against distributing to minors sexually explicit materials" constituted a "per se violation of the dormant Commerce Clause" because the "practical effect" of Vermont's effort to regulate online conduct was to "project[] its legislation into other States, and *directly regulated* commerce therein") (internal quotation marks omitted and emphasis in original); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004) (finding dormant Commerce Clause barred Virginia law regulating publication of certain material online and noting that "[g]iven the broad reach of the Internet, it is difficult to see how a blanket regulation of Internet material … can be construed to have only a local effect.").

Plaintiffs' reliance (Opp. 16) on *Hirst v. Skywest, Inc.*, 910 F.3d 961 (7th Cir. 2018), for the proposition that "[i]f businesses like Defendant want to collect biometric data from a nationwide swath of individuals, they will have to learn to comply with different state privacy regimes," is misplaced. In *Hirst*, the plaintiff flight attendants from "ten different states" sued their employer, Skywest, under the federal Fair Labor Standards Act ("FLSA") and various state and local minimum wage laws for failing to pay them for hours worked while not in the air. *Id.* at 964. The Court rejected Skywest's argument that the application of inconsistent state and local minimum wage laws to an airline operating in numerous states violated the dormant Commerce Clause primarily because "the dormant Commerce Clause does not apply to state and local laws expressly authorized by Congress," and the "*FLSA contains such an express authorization*." *Id.* at 967 (emphasis added). The court further held that, since "[s]tate and local wage laws can burden companies within their own localities just as much, if not more, than out-of-state ones, Skywest "has failed to allege any discrimination against interstate commerce." *Id.* Moreover, unlike *Skywest*, which employed "flight attendants … based out of airports in ten different states," *id.* at

964, and thus could reasonably expect to be subject to those states' minimum wage laws, Plaintiffs here do not allege any relevant "in-state" conduct by IBM.

Plaintiffs' reliance (Opp. 17) on *S. Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018), is misplaced for similar reasons. In *S. Dakota*, the Supreme Court overturned its prior precedent holding that, under the dormant Commerce Clause, a state "may not require a business that has no physical presence in the State to collect its sales tax," and held that online retailers with no physical presence or employees in a state could nevertheless be required to collect and remit sales tax for sales of products or services *within the state*. *Id.* at 2084. Plaintiffs' contention that *S. Dakota* stands more broadly for the proposition that "states can regulate conduct that occurs entirely online without offending the Dormant Commerce Clause" (Opp. 17), is baseless. The Court held no such thing.

## C. BIPA Does Not Apply To IBM's Analysis Of Photos

IBM demonstrated in its opening brief that Plaintiffs' BIPA claims fail because: (1) BIPA's plain language expressly excludes photographs and "information derived from" photographs—such as the facial measurements that Plaintiffs allege IBM took from photos that they posted online; and (2) BIPA § 5 makes clear that the General Assembly intended the statute to prevent the public from being "deterred from partaking in biometric-identifier-facilitated transactions," which is not applicable here. *See* Dkt. No. 36, at 14-15.

Plaintiffs' primary response is to again point to *Rivera* and *Monroy* and argue that this Court should simply defer to the reasoning of the other courts that have examined this issue under different allegations. Opp. 18. But interpretation and application of BIPA is fast-evolving and new decisions illustrate the tension between and among courts in how to apply BIPA to unique and nuanced fact patterns. Indeed, although Plaintiffs ask this Court to follow *Rivera*'s determination that BIPA applies to scans of photos of faces, Plaintiffs omit that, in *Rivera*, the

court ultimately granted Google summary judgment and *dismissed* the BIPA claims on the basis that the "creation of face templates" from photographs, even without the individual's knowledge or consent, was not a concrete injury for purposes of Article III standing. *Rivera v. Google, Inc.*, 366 F. Supp. 3d 998, 1010-11 (N.D. Ill. 2018). Plaintiffs no doubt disagree with the *Rivera* court's reasoning on *that* issue, and, indeed, the court's reasoning recently was *rejected* by the Seventh Circuit in *Bryant*, 2020 WL 2121463, *7. Thus, this Court should not simply accept the reasoning of its sister courts regarding BIPA's scope and application but should instead conduct an independent analysis based on the facts alleged.

Plaintiffs' argument that IBM seeks a reading of BIPA that "would create an exception so sweeping that it would swallow the rule," is also without merit. Opp. 20. IBM was only able to access Plaintiffs' photos because Plaintiffs posted their photos publicly online. Plaintiffs and others cannot claim a significant privacy interest in photos that they freely published to the Internet. *See e.g.*, *Rasmusson v. Chisago County*, 991 F. Supp. 2d 1065, 1078-79 (D. Minn. 2014) (granting motion to dismiss claims for violation of common law privacy from information contained on an individual's driver's license, including the license photo, because "there is a low expectation of privacy in this type of information" and "because individuals show their driver's licenses to strangers on a daily basis."). BIPA thus appropriately excepts from its reach photos and information that might be derived from photos. The court should not limit BIPA's photo exception in a way that would expand BIPA's reach to circumstances that was never intended.

Given the General Assembly's clear intent to limit BIPA's application to "biometric identifier-facilitated transactions," and not to "photographs" or "information derived from [photographs]," the Court should decline to follow *Rivera* and *Monroy* and find that BIPA does not apply to IBM's scans of faces that appear in publicly available online photos.

## II.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

IBM also demonstrated in its opening brief that Plaintiffs' unjust enrichment claim should be dismissed because it "rests on the same improper conduct alleged in another claim"—*i.e.*, Plaintiffs' BIPA claims—and therefore the claim "stand[s] or fall[s] with the related [BIPA] claim[s]."  Dkt. No. 36, at 17 (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)).  Plaintiffs do not dispute this—they argue that "Defendant was unjustly enriched when it *illegally* [*i.e.*, in violation of BIPA] obtained Plaintiffs' biometrics and profited therefrom."  Opp. 21 (emphasis added).  Thus, the parties are in agreement that, if the Court dismisses Plaintiffs' BIPA claims, it should dismiss the unjust enrichment claim as well.

Even if the Court does not dismiss the BIPA claims, it should still dismiss the unjust enrichment claim for the independent reason that Plaintiffs do not allege that they suffered an economic "expense."  Dkt. No. 36, at 17-18.  In its opening brief, IBM noted that its research revealed "no court in Illinois has 'applied the doctrine of unjust enrichment outside the context of an expense stemming from some tangible economic loss to a plaintiff.'"  *Id.* at 18 (quoting *Cousineau v. Microsoft*, 992 F. Supp. 2d 1116, 1130 (W.D. Wash. 2012) (quotation marks omitted)).  Plaintiffs apparently cannot identify such a case either, as their Opposition cites none. Instead, Plaintiffs cite *Bryant*—a case that does not address unjust enrichment—for the irrelevant proposition that a BIPA violation causes an "injury" sufficient to confer Article III standing. Plaintiffs' assertion that, in *Bryant*, the Seventh Circuit held that "violations of Section 15(b) resulted in ... economic harm," Opp. 21-22 (citing *Bryant*, 2020 WL 2121463, at *7), is incorrect. *Bryant* noted the "judgment of Illinois's General Assembly" that "economic harm … *may result*

from" the dissemination of biometric information.[3]  2020 WL 212 1463, at *7 (emphasis added).

Plaintiffs do not allege that they suffered any "economic harm" here.  Nor do they cite a single

case permitting an unjust enrichment claim to proceed in the absence of an economic "expense."[4]

Plaintiffs' contention (Opp. 23-24) that there is "no requirement that [they] allege they had

a reasonable expectation for payment from [IBM]"—tacitly conceding that they have not alleged

such an expectation—is also incorrect.  Courts in this district have consistently held that such a

requirement exists, and have not suggested that the requirement is limited to the unique factual

circumstances that Plaintiffs posit.  *See Sunny Handicraft v. Envision This!, LLC*, 2015 WL 231108,

at *5 (N.D. Ill. Jan. 16, 2015); *Motorola, Inc. v. Lemko Corp.*, 2010 WL 960348, at *5 (N.D. Ill.

Mar. 15, 2020); *see also Rose v. Nat'l Collegiate Athletic Ass'n*, 346 F. Supp. 3d 1212, 1229 (N.D.

Ill. 2018) (finding the same requirement exists under Indiana common law).  Plaintiffs' failure to

allege such an expectation is fatal to their unjust enrichment claim.[5]

## CONCLUSION

For the foregoing reasons, Plaintiffs' SAC should be dismissed with prejudice.

---

[3]  Plaintiffs reliance (Opp. 22) on *Patel v. Facebook, Inc.*, 290 F. Supp. 3d 948, 954 (C.D. Cal. 2018), and *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶¶ 35-38, is similarly misplaced. Neither of those cases addressed the requirements of an unjust enrichment claim.

[4]  Indeed, in *every* case Plaintiffs cite in support of their argument that an economic expense is unnecessary for unjust enrichment (Opp. 23 ), the plaintiff had, in fact, alleged an economic expense.  *See, e.g.*, *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 871 (E.D. Mich. 2017) (plaintiffs alleged that defendants' "unlawful disclosure of plaintiffs' personal-reading information" "made their [purchased] subscriptions less valuable"); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 643 (E.D. Mich. 2017) (holding plaintiff adequately pleaded unjust enrichment where she conferred benefits on the defendant—and incurred a corresponding expense—in the form of "subscription fees paid  by Plaintiff"); *Boelter v. Hearst Comm'ns, Inc.*, 269 F. Supp. 3d 172, 199 (S.D.N.Y. 2017) (defendant allegedly benefited from plaintiff's "subscription fees").

[5]  Plaintiffs' separate cause of action for injunctive relief also "fail[s] as it does not state a cause of action."  *Obi v. Chase Home Fin., LLC*, 2012 WL 1802450, at *4 (N.D. Ill. May 15, 2012) (dismissing injunctive relief claim because "it is apparent that injunctive relief is a remedy" and "not a cause of action.").  Plaintiffs apparently do not dispute this as their brief does not address it.

Dated:  May 28, 2020

Respectfully Submitted,

/s/ Stephen A. Broome

Stephen A. Broome
*Admitted Pro Hac Vice*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figeuroa St., 10th Floor
Los Angeles, CA 90405
Telephone: (213) 443-3285
stephenbroome@quinnemanuel.com

Lazar P. Raynal
Kaitlin P. Sheehan
David Lakin
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705-7400
lazarraynal@quinnemanuel.com
kaitlinsheehan@quinnemanuel.com
davidlakin@quinnemanuel.com

***Counsel for IBM***

## CERTIFICATE OF SERVICE

The undersigned attorney for Counsel for IBM hereby certifies that on May 28, 2020, the foregoing was electronically filed with the U.S. District Court Clerk, Northern District of Illinois, Eastern Division, by using the CM/ECF filing system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Stephen A. Broome*
Stephen A. Broome
Counsel for IBM