**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STEVEN VANCE and TIM JANECYK, for themselves and others similarly situated, | Case No. 20 C 577 |
| | Judge Charles P. Kocoras |
| Plaintiffs, | |
| | Magistrate Judge Gabriel A. Fuentes |
| v. | |
| | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | **JURY TRIAL DEMANDED** |
| | |
| Defendant. | |

**IBM'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND
AMENDED CLASS ACTION COMPLAINT**

Defendant International Business Machines Corporation ("IBM"), by and through its attorneys, hereby submits its Answer and Affirmative Defenses to Plaintiffs Steven Vance and Tim Janecyk (collectively, the "Plaintiffs") Second Amended Class Action Complaint (the "SAC"). Any allegation, averment, contention, or statement in the SAC that is not specifically admitted is denied. IBM responds to each of the paragraphs as follows:

**AS TO THE SECTION TITLED "INTRODUCTION"**

1. Every individual has unique biometric identifiers by which he or she can be identified. One such biometric identifier is a person's facial geometry.

**ANSWER:** IBM denies the allegations in Paragraph 1.

2. As the Illinois General Assembly has found: "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at

1

heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."
740 ILCS § 14/5(c).

**ANSWER:** Plaintiffs purport to summarize select portions of 740 ILCS § 14/5(c). IBM denies that Plaintiffs' summarized sections accurately reflect the totality of BIPA. IBM denies the allegations in Paragraph 2 to the extent they are inconsistent with BIPA. IBM denies the remaining allegations in Paragraph 2.

3. Pursuant to Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS §14/1, *et seq.,* Illinois prohibits among other things, private entities from collecting, capturing, obtaining, disclosing, redisclosing, disseminating or profiting from the biometric identifiers or information of an individual without providing written notice and without obtaining a written release from the impacted individual or his authorized representative. BIPA also requires private entities in possession of biometric identifiers to adopt retention and destruction policies and to take measures to prevent the release of that information.

**ANSWER:** Paragraph 3 makes legal conclusions to which no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 3.

4. In violation of BIPA, at relevant times, Defendant IBM, a multinational technology company headquartered in the State of New York, collected, captured, obtained, disclosed, redisclosed, disseminated and profited from the facial geometric scans of thousands of Illinois citizens in violation of BIPA's requirements. Specifically, using a set of images from the photo-sharing service Flickr, IBM collected, captured and otherwise obtained facial geometric scans of individuals depicted in approximately one million photos and built a database containing each of the scanned individuals' unique "craniofacial measurements." IBM then, among other things, disclosed, redisclosed and otherwise disseminated to third parties the biometric identifiers and

information in the database in order to profit. IBM possessed the biometric identifiers and information without having adopted or made public any policy, written or otherwise, to govern the retention and destruction of thereof.

**ANSWER:**    IBM admits that it is a New York corporation with its headquarters in Armonk, New York.  IBM avers that it downloaded photos from Yahoo's publicly available YFCC-100M database, which IBM understands Yahoo! populated with images posted by Flickr users pursuant to Creative Commons Licenses.  IBM avers that it used algorithms to process the photos it downloaded from the YFCC-100M database in order to filter the photos down to approximately one million mostly frontal facial images, which IBM used to create the "Diversity in Faces" or "DiF" dataset.  IBM avers that it used algorithms to apply coding schemes to the images used for the DiF dataset in order to generate certain data relating to facial images, including craniofacial distances.  IBM lacks knowledge as to whether the images it used for the DiF dataset included "thousands of Illinois citizens."  IBM denies the remaining allegations in this paragraph.

     5.     Defendant IBM engaged in the above-described conduct: (a) without informing the impacted individuals, including Plaintiffs and members of the proposed class (the "Class Members"), that their biometric identifiers were being collected, captured, obtained, disclosed, redisclosed and otherwise disseminated; (b) without informing the impacted individuals in writing of the purpose of the collection, capture, obtainment, disclosure, redisclosure and dissemination of the biometric identifiers and information; and (c) without seeking and obtaining written releases from such impacted individuals or their authorized representatives.

**ANSWER:**    IBM avers that, in connection with its work on the DiF dataset, which was conducted by four IBM researchers working from New York, IBM did not take steps to comply with BIPA because BIPA is inapplicable.  IBM denies that the data its coding schemes generated

from images used to create the DiF dataset included biometric identifiers or biometric information. IBM denies the remaining allegations in this paragraph.

6. In violation of BIPA, Defendant IBM also profited from its unlawful use of the biometric identifiers and information of Plaintiffs and Class Members. On information and belief, IBM used the biometric identifiers and information of Plaintiffs and Class Members to improve the accuracy of its own facial recognition products and to cement its market-leading position in artificial intelligence. From 2016 to 2018, IBM derived more revenue from artificial intelligence than any other company in the world. In 2018 alone, IBM's revenue from artificial intelligence products totaled more than $2.5 Billion. Those products include IBM Watson Visual Recognition, which IBM clients can use to estimate the age and gender of people depicted in images and, in some instances, identify specific individuals. IBM owns the intellectual property developed by its researchers and will not disclose the data sets used to train its Watson products.

**ANSWER:** IBM denies that it violated BIPA because BIPA is inapplicable. IBM denies that the data it generated from images used to create the DiF dataset included biometric identifiers or biometric information. IBM denies that it used data generated from images of Plaintiffs and Class Members to improve the accuracy of commercial facial recognition products and/or to affect its "position in artificial intelligence." IBM lacks knowledge and information sufficient to determine whether, from 2016-2018, IBM derived more revenue from artificial intelligence than any other company in the world. IBM admits that it owns a product called IBM Watson Visual Recognition, but denies (1) the characterization of IBM Watson Visual Recognition's functionality described in Paragraph 6, and (2) that IBM Watson Visual Recognition is relevant in this case. IBM avers that the allegation "IBM owns the intellectual property developed by its researchers and will not disclose the data sets used to train its Watson products," is vague, ambiguous, and irrelevant

because the DiF dataset was not used to train Watson products. IBM denies the remaining allegations in this paragraph.

7.      As the Illinois General Assembly has found and the Illinois Supreme Court has confirmed, the harm to Plaintiffs and Class Members as a result of the BIPA violations alleged herein has already occurred.

**ANSWER:**      IBM denies the allegations in Paragraph 7.

8.      Further, as businesses worldwide compete to develop ever more advanced facial recognition technology, the race for data imperils the privacy of individuals everywhere. Public policy in Illinois provides that given the risks of unwanted data collection and disclosure, its citizens need the power to make decisions about the fate of their unique biometric identifiers and information. Defendant IBM's actions robbed Plaintiffs and Class Members of that power.

**ANSWER:** IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 8 regarding "the race for data" and "[p]ublic policy" and therefore denies the same. IBM denies that the data it generated from images used to create the DiF dataset included biometric identifiers or biometric information. IBM denies the remaining allegations in this paragraph.

9.      Moreover, as a direct result of Defendant IBM's actions, each individualized scan of a person's facial geometry can be tied back to the Flickr account to which an originating photo was posted. This, in turn, made and continues to make it possible for third parties to connect the biometric identifiers and information of Plaintiffs and Class Members that have been collected, captured, and otherwise obtained to other photos in which Plaintiffs, a member of the Class and/or others appear, subjecting Plaintiffs and Class Members to increased surveillance, stalking, identity theft, social engineering (a type of hacking technique) and other invasions of privacy and fraud.

Moreover, as a direct result of IBM's actions, Plaintiffs' and Class Members' biometric identifiers and information are no longer under their control and are available to a potentially unlimited range of unknown individuals for whatever uses they please. These injuries, which are imminent and clearly impending, are in addition to the injuries Plaintiffs and Class Members have already sustained as a result of IBM's actions.

**ANSWER:** IBM denies the allegations in Paragraph 9.

10. Plaintiffs bring this Second Amended Class Action Complaint seeking: (a) statutory damages of $5,000 per BIPA violation, or, alternatively, if Defendant IBM acted negligently, $1,000 per BIPA violation, along with attorneys' fees and costs; (b) disgorgement of IBM's ill-gotten gains derived from the use of the unlawfully-acquired data; and (c) an injunction (i) barring Defendant IBM from any further use of individuals' biometric identifiers and information; (ii) barring IBM from continuing to collect, capture, obtain, disclose, redisclose, disseminate and profit from Plaintiffs' and Class Members' biometric identifiers and information; (iii) requiring IBM to delete and destroy all biometric identifiers and information in its possession, custody and control; and (iv) requiring IBM to claw back the biometric identifiers and information from any third parties to whom IBM disclosed, redisclosed and disseminated it.

**ANSWER:** Paragraph 10 merely purports to summarize the relief Plaintiffs seek, and thus no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 10.

### AS TO THE SECTION TITLED "PARTIES"

11. At relevant times, Plaintiff STEVEN VANCE was—and remains—an Illinois resident. Defendant IBM performed facial geometric scans of Plaintiff Vance from photos Plaintiff Vance had uploaded to Flickr.

**ANSWER:** IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegation in the first sentence of Paragraph 11 and therefore denies the same. IBM denies that it took "facial geometric scans of Plaintiff Vance"; IBM avers that the scans of photos it performed to create the DiF dataset do not constitute "facial geometric scans." IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegation that IBM scanned Plaintiff Vance's photos and therefore denies the same.

12. At relevant times, Plaintiff TIM JANECYK was—and remains—an Illinois resident. Defendant IBM performed facial geometric scans of Plaintiff Janecyk from photos Plaintiff Janecyk had uploaded to Flickr.

**ANSWER:** IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegation in the first sentence of in Paragraph 12 and therefore denies the same. IBM denies that it took "facial geometric scans of Plaintiff Janecyk"; IBM avers that the scans of photos it performed to create the DiF dataset do not constitute "facial geometric scans." IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegation that IBM scanned Plaintiff Janecyk's photos and therefore denies the same.

13. Defendant IBM is a New York corporation with its corporate headquarters in Armonk, New York and a regional headquarters in Chicago, Illinois. IBM has a registered agent in Illinois.

**ANSWER:** IBM admits that it is a New York corporation with its corporate headquarters in Armonk, New York. IBM admits that it has an office in Chicago, Illinois and has a registered agent in Illinois. IBM denies the remaining allegations in this paragraph.

### AS TO THE SECTION TITLED "JURISDICTION AND VENUE"

14. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties in this action,

the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there are 100 or more members of the Class. Because it is estimated that the Class will have thousands of members and Defendant IBM's intentional and reckless violations of BIPA are punishable by statutory damages of $5,000 per violation, the amount in controversy is well in excess of $5,000,000. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:**     Paragraph 14 makes legal conclusions to which no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 14.

15.     This Court has personal jurisdiction over Defendant IBM because IBM used and disseminated data derived directly from Illinois-based Flickr accounts and exposed residents of Illinois to ongoing privacy risks within Illinois based on the collection, capture, obtainment, disclosure, redisclosure and dissemination of their biometric identifiers and information. Furthermore, many of the photographs IBM used for its unlawful collection, capture and obtainment of biometric identifiers and information were created in Illinois, uploaded from Illinois, and/or managed via Illinois-based user accounts, computers, and mobile devices. Because of the scope and magnitude of IBM's conduct, which included identifying the location of the subjects in a large percentage of affected photographs, IBM knew that its collection, capture, obtainment, disclosure, redisclosure and dissemination of impacted individuals' biometric identifiers and information would injure Illinois residents and citizens. IBM knew or had reason to know that collecting, capturing, obtaining, disclosing, redisclosing and disseminating Illinois citizens' and residents' biometric identifiers and information without providing the requisite notice or obtaining the requisite releases would deprive Illinois citizens and residents of their statutorily-protected privacy rights, neutralize Illinois citizens' and residents' ability to control access to their

biometric identifiers and information via their Illinois-managed devices, expose Illinois citizens and residents to potential surveillance and other privacy harms as they went about their lives within the state, and impair Plaintiffs' ability to continuing posting pictures of themselves and other Illinois residents to Flickr and other social media or image hosting platforms. IBM also has had a large and continuous presence in Illinois for many years, including a regional headquarters and, at least, hundreds of employees. Some of those Illinois employees work on IBM's visual recognition products that IBM, on information and belief, has been able to develop and improve due in part to its unlawful use of Plaintiffs' and Class Members' biometric information and identifiers. As part of its extensive business activities in Illinois, IBM also promotes its visual recognition products — on information and belief, developed in part from the unlawful use of Plaintiffs' and Class Members' biometric identifiers and information — to current and potential customers within the state.

**ANSWER:**    Paragraph 15 makes legal conclusions as to which no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 15.

16.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred in Illinois. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over Defendant IBM.

**ANSWER:**    Paragraph 16 makes legal conclusions as to which no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 16.

### AS TO THE SECTION TITLED "ILLINOIS BIOMETRIC PRIVACY LAWS"

17.    BIPA seeks to safeguard individuals' biometric identifiers and information.

**ANSWER:**    Paragraph 17 makes legal conclusions to which no response is required.  To the extent a response is required, IBM denies the allegations in in Paragraph 17.

18.     Biometric identifiers include a scan of an individual's face geometry. 740 ILCS § 14/10.

**ANSWER:**     Paragraph 18 makes legal conclusions to which no response is required.  To the extent a response is required, IBM denies the allegations in in Paragraph 18.

19.     Biometric information is "any information . . . based on an individual's biometric identifier used to identify an individual." 740 ILCS § 14/10.

**ANSWER:**     Paragraph 19 makes legal conclusions to which no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 19.

20.     Pursuant to BIPA, a private entity, such as Defendant IBM, is among other things: (a) prohibited from collecting, capturing or otherwise obtaining an individual's biometric identifiers and information without providing written notice and obtaining a written release; (b) prohibited from selling, leasing, trading or otherwise profiting from an individual's biometric identifiers and information; (c) prohibited from disclosing, redisclosing or otherwise disseminating an individual's biometric identifiers or information in the absence of circumstances specifically set forth in the statute; and (d) required, to the extent it is in possession of biometric identifiers or information, to develop a written policy, made available to the public, that establishes a retention schedule and guidelines for permanently destroying such identifiers and information. 740 ILCS § 14/15.

**ANSWER:**     Paragraph 20 makes legal conclusions to which no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 20.

21.     BIPA provides for a private right of action and allows a prevailing party to recover liquidated damages in the amount of: (a) $1,000 or actual damages, whichever is greater, for negligent violations of its provisions; and (b) $5,000 or actual damages, whichever is greater, for

intentional or reckless violations of its provisions. 740 ILCS § 14/20. BIPA also allows for the recovery of attorneys' fees and costs and injunctive relief. 740 ILCS § 14/20.

**ANSWER:**    Paragraph 21 makes legal conclusions to which no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 21.

### AS TO THE SECTION TITLED "ALLEGATIONS"

#### As To The Section Titled "Allegations Related to Plaintiff Vance"

22.    Plaintiff Vance has been a member of Flickr since 2006.

**ANSWER:**    IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and therefore denies the same.

23.    In or about 2008, Plaintiff Vance uploaded a photo of himself and two family members to Flickr from his computer in Illinois (the "2008 Photo"). Plaintiff Vance uploaded numerous other photos to Flickr.

**ANSWER:**    IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and therefore denies the same.

24.    Flickr and its parent company—Yahoo!—subsequently made the 2008 Photo, among millions of other photos, available to Defendant IBM, among others.

**ANSWER:**    IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and therefore denies the same.

25.    Defendant IBM subsequently collected, captured and otherwise obtained biometric identifiers and information of individuals, including Plaintiff Vance, in sixty-one of Plaintiff Vance's photos, including the 2008 Photo. IBM then disclosed, redisclosed, disseminated and profited from Plaintiff Vance's biometric identifiers and information.

**ANSWER:**    IBM denies that the data it generated from images used to create the DiF dataset included biometric identifiers or biometric information. IBM lacks knowledge and information

sufficient to form a belief as to whether Plaintiff Vance's photos were among those used to create the DiF dataset and therefore denies the same. IBM denies the remaining allegations in this paragraph.

26. Defendant IBM: (a) never advised Plaintiff Vance in writing or otherwise that it was performing scans of his facial geometry; (b) never informed Plaintiff Vance in writing or otherwise of the purpose for which it was collecting, capturing, obtaining, disclosing, redisclosing and disseminating Plaintiff Vance's biometric identifiers and information; and (c) never sought, nor received, a written release from Plaintiff Vance or his authorized representative that allowed IBM to collect, capture, obtain, disclose, redisclose and disseminate Plaintiff Vance's biometric identifiers and information.

**ANSWER:** IBM admits that, with respect to the work it performed on any of the images made publicly available by Yahoo! on the internet and linked in the DiF dataset, IBM did not comply with BIPA because BIPA is inapplicable. IBM denies the remaining allegations in this paragraph.

27. As alleged above, Defendant IBM's conduct has injured Plaintiff Vance and subjected him to additional imminent and certainly impending injuries.

**ANSWER:** IBM denies the allegations in Paragraph 27.

**As To The Section Titled "Allegations Related to Plaintiff Janecyk"**

28. Plaintiff Janecyk is an accomplished photographer, having focused his work in portraiture and street life photography. Plaintiff Janecyk has pioneered a certain style of portraiture that involves taking extreme close-ups of faces, often placing a wide-angle lens less about twelve Inches from the subject's face. Plaintiff Janecyk has taken many thousands of such photographs, and has taught several related photography classes.

**ANSWER:** IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and therefore denies the same.

29. Many of Plaintiff Janecyk's subjects include strangers Plaintiff Janecyk approaches on the streets in and near Chicago. While introducing himself to individuals, Plaintiff Janecyk often assures them that he is taking their photographs as a hobbyist, that their photographs will not be used by other parties, and that he is not using them for a commercial purpose. Plaintiff Janecyk must sometimes invest time into building a relationship of trust before subjects will allow photographs—for instance, Plaintiff Janecyk has spent several days building relationships with weary subjects at rallies and other sensitive events.

**ANSWER:** IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 29 and therefore denies the same.

30. In 2008, Plaintiff Janecyk signed up for a Flickr account in the Village of Tinley Park, Illinois, and has since then uploaded in excess of a thousand of his photographs to Flickr. Among those photos is a 2011 photo depicting Plaintiff Janecyk's own face ("2011 Photo").

**ANSWER:** IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 30 and therefore denies the same.

31. Flickr and its parent company—Yahoo!—subsequently made the 2011 Photo, among millions of other photos, available to Defendant IBM, among others.

**ANSWER:** IBM admits that Yahoo! created the YFCC-100M database and made the YFCC-100M database available to the public. IBM admits that it had access to the YFCC-100M database. IBM lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31 and therefore denies the same.

32.     Defendant IBM subsequently collected, captured and otherwise obtained biometric identifiers and information of individuals, including Plaintiff Janecyk, in seven of Plaintiff Janecyk's photos, including the 2011 Photo. IBM then disclosed, redisclosed, disseminated and profited from Plaintiff Janecyk's biometric identifiers and information.

**ANSWER:**     IBM denies that the data it generated from images used to create the DiF dataset included biometric identifiers or biometric information.  IBM lacks knowledge and information sufficient to form a belief as to whether Plaintiff Janecyk's photos are among those used to create the DiF dataset and therefore denies the same.  IBM denies the remaining allegations in this paragraph.

33.     As is the case for all Plaintiffs and Class Members, IBM has, upon information and belief, captured biometrics from Plaintiff Janecyk's photographs appearing in the dataset— including the 2011 Photo—by automatically locating and scanning Plaintiff Janecyk's face, and by extracting geometric data relating to the contours of his face and the distances between his eyes, nose, and ears — data which IBM then used to create a unique template of Plaintiff Janecyk's face, as set forth more fully below.

**ANSWER:**     IBM denies the allegations in Paragraph 33.

34.     The resulting unique face template was: (a) used by Defendant IBM for research purposes and to develop its facial recognition technology; and (b) disseminated by IBM to third parties.

**ANSWER:**     IBM avers that it used algorithms to apply coding schemes to the images made publicly available by Yahoo! and linked in the DiF dataset in order to generate certain data relating variation in measurements of facial images at the population level.  IBM admits that it made the DiF dataset available to third-party research institutions for research purposes only.  IBM lacks

knowledge or information as to whether Plaintiff Janecyk's photographs are among the images used to create the DiF dataset. IBM denies the remaining allegations in this paragraph.

35.     Plaintiff Janecyk's face template was also used to recognize his gender, age, and race.

**ANSWER:**     IBM denies the allegations in Paragraph 35.

36.     Plaintiff Janecyk never consented, agreed, or gave permission—written or otherwise—to Defendant IBM for the collection or storage of his unique biometric identifiers or biometric information. Plaintiff Janecyk had no idea IBM was ever in possession of any of his photographs.

**ANSWER:**     IBM avers that it is not aware of Plaintiff Janecyk consenting, agreeing, or giving permission to IBM. IBM further avers that it is not aware of Plaintiff Janecyk ever interacting with IBM. IBM lacks knowledge or information as to whether IBM ever possessed any of Plaintiff Janecyk's photographs and, if so, whether Plaintiff Janecyk had an idea that IBM was ever in possession of any of his photographs. IBM denies the remaining allegations in this paragraph.

37.     Further, Defendant IBM never provided Plaintiff Janecyk with, nor did Plaintiff Janecyk ever sign, a written release allowing IBM to collect or store his unique biometric identifiers or biometric information.

**ANSWER:**     IBM avers that, with respect to the work it performed on any of the images made publicly available by Yahoo! and linked to in the DiF dataset, IBM did not comply with BIPA because BIPA is inapplicable. IBM avers that it is not aware of ever interacting with Plaintiff Janecyk. IBM avers that it is not aware of ever providing Plaintiff Janecyk, or ever receiving from Plaintiff Janecyk, a written release. IBM denies the remaining allegations in this paragraph.

38.     Likewise, Defendant IBM never provided Plaintiff Janecyk with an opportunity to prohibit or prevent the collection, storage, use, or dissemination of his unique biometric identifiers or biometric information.

**ANSWER:**     IBM avers that, with respect to the work it performed on any of the images made publicly available by Yahoo! and linked to in the DiF dataset, IBM did not comply with BIPA because BIPA is inapplicable. IBM avers that it is not aware of ever interacting with Plaintiff Janecyk. IBM denies the remaining allegations in this paragraph.

39.     Nevertheless, Defendant IBM took copies of Plaintiff Janecyk's photographs, located Plaintiff Janecyk's face in the photos, scanned Plaintiff Janecyk's facial geometry, created a unique face template corresponding to Plaintiff Janecyk, and shared the biometric data with third parties, all in direct violation of BIPA.

**ANSWER:**     IBM lacks knowledge or information sufficient to form a belief as to whether it obtained copies of Plaintiff Janecyk's photos from the images made publicly available by Yahoo! and/or scanned photos of Janecyk's face and therefore denies the same. IBM denies the remaining allegations in this paragraph.

### As To The Section Titled "Defendant IBM's Unlawful Conduct"

40.     In 2014, Yahoo!, then the parent company of Flickr, released to the public over 99 million photos uploaded by Flickr users from 2004 through 2014 as part of a single, downloadable dataset called YFCC100M ("Flickr Dataset"). Each image in the Flickr Dataset—identified via a URL—came with information that could connect the image back to the Flickr account with which the photo was affiliated. For many photos, the dataset also contained geographic information regarding where the photo was taken, as well as "tags" that provided further information about the photos' subjects.

**ANSWER:** IBM admits that, in 2014, Yahoo! released to the public over 99 million photos that IBM understands were uploaded by Flickr users from 2004 through 2014 as part of a single, downloadable dataset called YFCC-100M. IBM admits many of the images in the YFCC-100M database included a URL that was purported to connect the image to the Flickr account to which the image was posted. IBM lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 40 and therefore denies the same.

41. The photographs Yahoo took to create the Flickr Dataset were taken from Flickr users without their knowledge or express consent, and were made publicly available to entities such as IBM.

**ANSWER:** IBM avers that it understands the images that Yahoo! used to create the YFCC-100M database were subject to Creative Commons Licenses allowing for broad usage and agreed to by the relevant Flickr account holders. IBM otherwise lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and therefore denies the same.

42. Images of Plaintiffs' and Class Members' faces were among the photos in the Flickr Dataset.

**ANSWER:** IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 42 and therefore denies the same.

43. In or about January 2019, after the Flickr Dataset was made available, Defendant IBM created its own dataset (the "IBM Dataset") from a subset of the Flickr Dataset. The IBM Dataset consisted of approximately one million frontal-facing images of human faces — including Plaintiffs' and Class Members' faces — that were clear enough to permit further analysis.

**ANSWER:** IBM admits that, in or about January 2019, IBM downloaded images from the YFCC-100M database that consisted of approximately one million frontal-facing images of human faces that were clear enough to permit further scientific research. IBM lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 43 and therefore denies the same.

44. After culling the photographs to be used in its IBM Dataset, Defendant IBM processed the photographs to capture the biometrics of the faces appearing therein. Specifically, for every detected face it extracted 68 key-points and processed each one by extracting at least ten facial coding schemes, including: (b) Craniofacial Distances (which characterize all the vertical distances between elements in a face: the top of the forehead, the eyes, the nose, the mouth, and the chin); (b) Craniofacial Areas (measures corresponding to different areas of the cranium, such as eye fissures and lips); (c) Craniofacial Ratios; (d) Facial Symmetry; (e) Facial Regions Contrast; (f) Skin Color; (g) Age Prediction; (h) Gender Prediction; (i) Subjective Annotation; and (j) Pose and Resolution.

**ANSWER:** Paragraph 44 characterizes and purports to summarize statements contained in IBM's research paper titled Michele Merler et al., *Diversity in Faces*, IBM Research AI @ IBM T.J. Watson Research Center (2019), the contents of which speak for itself. IBM admits that the *Diversity in Faces* article's description of IBM's process with respect to the images is accurate. IBM denies the remaining allegations in this paragraph.

45. The below figure illustrates the data points Defendant IBM employed as the Basis for its extraction of class members' craniofacial measures for the first three coding schemes, *supra.*

**ANSWER:** Paragraph 45 and the figure below characterize and purport to summarize statements and figures contained in IBM's research paper titled Michele Merler et al., *Diversity in*

*Faces*, IBM Research AI @ IBM T.J. Watson Research Center (2019), the content of which speaks for itself. IBM admits that the *Diversity in Faces* article's description of IBM's process with respect to the images is accurate. IBM denies the remaining allegations in this paragraph.



46.    By doing so, Defendant IBM collected, captured, and obtained Plaintiffs' and Class Members' biometric identifiers and information in violation of BIPA. In further violation of BIPA, IBM engaged in the conduct described herein without providing the requisite notice to, or obtaining the requisite releases from, the subjects of the photos or their authorized representatives, including Plaintiffs and Class Members.

**ANSWER:**    IBM denies the allegations in Paragraph 46.

47.    In 2019, Defendant IBM began disclosing, redisclosing and otherwise disseminating its own "Diversity in Faces" dataset (the "DiF Dataset") to third-party researchers and private entities. The DiF Dataset included the approximately one million images of faces

contained in the IBM Dataset — again, including images of Plaintiffs' and Class Members' faces — along with the biometric identifiers and information of the subjects whose faces appeared in the photos, such as a "comprehensive set of annotations of intrinsic facial features that includes craniofacial distances, areas and ratios, facial symmetry and contrast, [and] skin color."

**ANSWER:** IBM admits that it provided access to the DiF dataset to third-party research institutions solely for research purposes. IBM avers that the DiF dataset included links to the images in the publicly available YFCC-100M database used to create the dataset. IBM denies that the DiF dataset includes biometric identifiers or biometric information. IBM admits that the DiF dataset included certain information about the facial images used to create the DiF dataset, as described in Michele Merler et al., *Diversity in Faces*, IBM Research AI @ IBM T.J. Watson Research Center (2019). IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 47 regarding "Plaintiffs' and Class Members' faces" and therefore denies the same. IBM denies the remaining allegations in this paragraph.

48. Each image in the DiF Dataset could be traced back to the individual Flickr account to which it was originally uploaded.

**ANSWER:** IBM admits that many of the images in the YFCC-100M database that IBM downloaded included active URLs that, IBM understands, connected to the Flickr account from which Yahoo! obtained the photo. IBM admits that it included these URLs in the DiF dataset. IBM denies the remaining allegations in this paragraph.

49. In collecting, capturing and otherwise obtaining the biometric identifiers and information of Plaintiffs and Class Members and, subsequently, disclosing, redisclosing and otherwise disseminating those biometric identifiers and information — all without providing the

requisite notice, obtaining the requisite releases or satisfying any of BIPA's other provisions that would excuse it from BIPA's mandates — Defendant IBM violated BEM.

**ANSWER:**    IBM denies the allegations in Paragraph 49.

50.    In further violation of BIPA, Defendant IBM failed to use a reasonable standard of care to protect Plaintiffs' and Class Members' biometric identifiers and information from disclosure and, in fact, affirmatively disclosed their biometric identifiers and information.

**ANSWER:**    IBM denies the allegations in Paragraph 50.

51.    In further violation of BIPA, as a private entity in possession of Plaintiffs' and Class Members' biometric identifiers and information, Defendant IBM failed to adopt or make available to the public a retention schedule or guidelines for permanently destroying such biometric identifiers and information once the initial purpose for collecting them had or has been satisfied.

**ANSWER:**    IBM denies the allegations in Paragraph 51.

52.    In further violation of BIPA, Defendant IBM profited from the biometric identifiers and information of Plaintiffs and Class Members. For instance, IBM profited from its unlawful collection, disclosure, redisclosure and dissemination of Plaintiffs' and Class Members' biometric data by, among other things, developing and improving its own for-profit facial recognition technology using the insights gleaned from the biometric identifiers and information and the algorithms trained on it, allowing IBM to: (a) sell more of its facial-recognition products to customers; (b) become a market leader in facial-recognition technology; and (c) burnish its brand reputation as a leader in the field.

**ANSWER:**    IBM denies the allegations in Paragraph 52.

53.    Defendant IBM's violations of BIPA were intentional and reckless or, in the alternative, negligent.

**ANSWER:** IBM denies the allegations in Paragraph 53.

**As To The Section Titled "Plaintiffs' and Class Members' Injuries and Damages"**

54. As alleged herein, as a result of Defendant IBM's unlawful conduct, Plaintiffs and Class Members have already sustained injuries and face many more imminent and certainly impending injuries, which injuries they will continue to suffer.

**ANSWER:** IBM denies the allegations in Paragraph 54.

55. Defendant IBM's unlawful conduct has resulted in, among other things: (a) Plaintiffs' and Class Members' unique biometric identifiers and information being collected, captured, obtained, disclosed, redisclosed, and otherwise disseminated without the requisite notice having been given and without the requisite releases having been obtained; and (b) Plaintiffs and Class Members being deprived of the very control over their biometric identifiers and information that BIPA was designed to protect.

**ANSWER:** IBM denies the allegations in Paragraph 55.

56. To this day, Plaintiffs and Class Members do not know which, or how many, individuals or entities have received, obtained, accessed, stored, disclosed, redisclosed or otherwise made use of Plaintiffs' and Class Members' biometric identifiers and information, exposing them to the imminent and certainly impending injuries of identity theft, fraud, stalking, surveillance, social engineering and other invasions of privacy.[1]

**ANSWER:** IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 56 and therefore denies the same. Footnote 1 at the end of Paragraph 56 is a hyperlink to a Forbes.com article, the content of which speaks for itself.

---

[1] *Facial Recognition Tech: 10 Views on Risks and Rewards*, https:/ /www.forbes.com/sites/forbestechcouncil/2018/04/03/facial-recognition-tech-1 0-views-on-risksand-rewards/#54d3e 1716b3c (accessed on Mar. 12, 2020)

57. As a result of Defendant IBM's misconduct, Plaintiffs and Class Members have no recourse for the fact that their biologically unique information has been compromised. Moreover, Plaintiffs and Class Members are likely to withdraw from biometric-facilitated transactions and other facially-mediated electronic participation.

**ANSWER:** IBM denies the first sentence of Paragraph 57. IBM lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 57 and therefore denies the same

**AS TO THE SECTION TITLED "CLASS ACTION ALLEGATIONS"**

58. Plaintiffs brings this action on behalf of himself and as a class action under Federal Rule of Civil Procedure 23, seeking damages and equitable relief on behalf of the following Class for which Plaintiffs seek certification: All Illinois residents whose faces appear in the IBM Dataset and/or DiF Dataset.

**ANSWER:** Paragraph 58 makes legal conclusions to which no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 58.

59. Excluded from the Class are: (a) Defendant IBM; (b) any parent, affiliate or subsidiary of Defendant IBM; (c) any entity in which Defendant IBM has a controlling interest; (d) any of Defendant IBM's officers or directors; or (e) any successor or assign of Defendant IBM. Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

**ANSWER:** Paragraph 59 makes legal conclusions to which no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 59.

60. Plaintiffs reserve the right to amend or modify the class definitions with greater specificity or division alter having had an opportunity to conduct discovery.

**ANSWER:** Paragraph 60 makes a legal conclusion as to which no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 60.

61. **Numerosity.** While the exact number of Class Members is not known at this time, Defendant IBM collected, captured, obtained, disclosed, redisclosed and otherwise disseminated biometric identifiers and information from approximately one million images of faces, and Plaintiffs estimate the total number of Class Members to be in the thousands. Consistent with Rule 23(a)(1), the proposed Class is therefore so numerous that joinder of all members is impracticable. Class Members may be identified through objective means, including objective data available to Defendant IBM regarding the images in the IBM and DiF Datasets. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media and/or published notice

**ANSWER:** Paragraph 61 makes legal conclusions as to which no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 61.

62. **Commonality and predominance.** Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the proposed Class. Common questions include, but are not limited to, the following:

a.     Whether Defendant IBM collected, captured and otherwise obtained the biometric identifiers and information of Plaintiffs and Class Members;

b.     Whether Defendant IBM possessed the biometric identifiers and information of Plaintiffs and Class Members;

c.     Whether Defendant IBM disclosed, redisclosed and otherwise disseminated the biometric identifiers and information of Plaintiffs and Class Members;

d.     Whether Defendant IBM profited from the biometric identifiers and information of Plaintiffs and Class Members;

e.     Whether Defendant IBM provided the notice required by BIPA before collecting, capturing, obtaining, disclosing, redisclosing and otherwise disseminating the biometric identifiers and information of Plaintiffs and Class Members;

f.     Whether Defendant IBM obtained written releases from Plaintiffs and Class Members or their authorized representatives before collecting, capturing, obtaining, disclosing, redisclosing and otherwise disseminating the biometric identifiers and information or Plaintiffs and Class Members;

g.     Whether Defendant IBM had in place — and disclosed to the public — the written retention and destruction policies required by BIPA while in possession of Plaintiffs' and Class Members' biometric identifiers and information;

h.     Whether Defendant IBM protected Plaintiffs' and Class Members' biometric identifiers and information from disclosure using the reasonable

standard of care within IBM's industry and in a manner that was the same
as or more protective than the manner in which IBM protects other
confidential and sensitive information;

  i. Whether Plaintiffs and Class Members suffered damages as a proximate
     result of Defendant IBM; and

  j. Whether Plaintiffs and Class Members are entitled to damages, equitable
     relief and other relief.

Moreover, based on Defendant IBM's public statements, there is no reason to believe it treated
any of the photos on which it performed a facial geometric scan differently from any others in
terms of: (a) the way in which IBM obtained the photos; (b) the biometric identifiers and
information collected, captured and otherwise obtained therefrom; (c) IBM's failure to provide the
requisite disclosures to Plaintiffs and Class Members or their authorized representatives; (d) IBM's
failure to obtain the requisite releases from Plaintiffs and Class Members or their authorized
representatives; (e) IBM's disclosure, redisclosure and dissemination of Plaintiffs' and Class
Members' biometric identifiers and information to third parties; or (f) the nonexistence of a
written, publicly-available retention and destruction schedule. In short, whether IBM violated
BIPA's requirements is a question that can uniformly be answered for all Class Members,
including Plaintiffs.

**ANSWER:** Paragraph 62 makes legal conclusions as to which no response is required. To the
extent a response is required, IBM denies the allegations in Paragraph 62.

63. **Typicality.** Plaintiffs' claims are typical of the claims of the Class they seek to
represent because Plaintiffs and all members of the proposed Class have suffered similar injuries

as a result of the same practices alleged herein. Plaintiffs has no interests to advance adverse to the interests of the other members of the proposed Class.

**ANSWER:**    Paragraph 63 makes a legal conclusion as to which no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 63.

64.    **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the proposed Class and has retained as his counsel attorneys experienced in class actions and complex litigation.

**ANSWER:**    Paragraph 64 makes a legal conclusion as to which no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 64.

65.    **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual Basis, may not be of such magnitude as to make the prosecution of individual actions against IBM economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. Moreover, individual litigation of the legal and factual issues of the case would increase the delay and expense to all parties and the court system. A class action, however, presents far fewer management difficulties and provides the benefit of a single adjudication, economy of scale and comprehensive supervision by a single court.

**ANSWER:**    Paragraph 65 makes a legal conclusion as to which no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 65.

66.    In the alternative, the proposed Class may be certified because:

a.      The prosecution of separate actions by each individual member of the proposed Class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendant IBM;

b.      The prosecution of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party Class Members or which would substantially impair their ability to protect their interests; and

c.      Defendant IBM acted or refused to act an grounds generally applicable to the proposed Class, thereby making final and injunctive relief appropriate with respect to members of the proposed Class.

**ANSWER:**      Paragraph 66 makes a legal conclusion as to which no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 66.

67.      Pursuant to Rule 23(c)(4), particular issues are appropriate for certification—namely the issues described in paragraph 46, above—because resolution of such issues would advance the disposition of the matter and the parties' interests therein.

**ANSWER:**      Paragraph 67 makes a legal conclusion as to which no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 67.

**AS TO THE SECTION TITLED "CLAIMS FOR RELIEF"**

**AS TO THE SECTION TITLED "COUNT ONE**
**(VIOLATION OF BIPA — 740 ILCS § 14/15(a))"**

68.      Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint as though fully set forth herein.

**ANSWER:** The allegations in Paragraph 68 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required. To the extent a response is required, IBM incorporates its answers to Paragraphs 1 to 67, as if fully stated herein.

69. As alleged above, Defendant IBM violated BIPA by possessing Plaintiffs' and Class Members' biometric identifiers and information without developing a written policy that it made available to the public that established a retention schedule and guidelines for permanently destroying biometric identifiers and information.

**ANSWER:** The allegations in Paragraph 69 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 69.

70. Defendant IBM's violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

**ANSWER:** The allegations in Paragraph 70 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 70.

71. As a direct and proximate result of Defendant IBM's violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

**ANSWER:** The allegations in Paragraph 71 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 71.

72. Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

**ANSWER:** The allegations in Paragraph 72 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 72.

73. Unless and until enjoined and restrained by order of this Court, Defendant IBM's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:** The allegations in Paragraph 73 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 73.

74. Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

**ANSWER:** The allegations in Paragraph 74 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 74.

**AS TO THE SECTION TITLED "COUNT TWO
(VIOLATION OF BIPA — 740 ILCS § 14/15(b))"**

75. Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint as though fully set forth herein.

**ANSWER:** IBM incorporates its answers to Paragraphs 1 to 74, as if fully stated herein.

76. As alleged above, Defendant IBM violated BIPA by collecting, capturing, and otherwise obtaining individuals' biometric identifiers and information, including the biometric

identifiers and information of Plaintiffs and Class Members, without providing the requisite written information and without obtaining the requisite written releases.

**ANSWER:** IBM denies the allegations in Paragraph 76.

77. Defendant's violations of BIPA were intentional and reckless or, pleaded in the

**ANSWER:** IBM denies the allegations in Paragraph 77.

78. As a direct and proximate result of Defendant IBM's violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

**ANSWER:** IBM denies the allegations in Paragraph 78.

79. Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

**ANSWER:** IBM admits that Plaintiffs purport to seek monetary relief as listed in Paragraph 79. IBM denies that Plaintiffs are entitled to any relief—monetary or otherwise. IBM denies the remaining allegations in this paragraph.

80. Unless and until enjoined and restrained by order of this Court, Defendant IBM's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:** IBM denies the allegations in Paragraph 80.

81. Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

**ANSWER:** IBM admits that Plaintiffs purport to seek the various forms of relief described in Paragraph 81. IBM denies that Plaintiffs are entitled to any of the forms of relief described in Paragraph 81. IBM denies the remaining allegations in this paragraph.

**AS TO THE SECTION TITLED "COUNT THREE**
**(VIOLATION OF BIPA — 740 ILCS § 14/15(c))"**

82. Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint, as though fully set forth herein.

**ANSWER:** IBM incorporates its answers to Paragraphs 1 to 81, as if fully stated herein.

83. As alleged above, Defendant IBM violated BIPA by unlawfully profiting from individuals' biometric identifiers and biometric information, including the biometric identifiers and information of Plaintiffs and Class Members.

**ANSWER:** IBM denies the allegations in Paragraph 83.

84. Defendant IBM's violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

**ANSWER:** IBM denies the allegations in Paragraph 84.

85. As a direct and proximate result of Defendant IBM's violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

**ANSWER:** IBM denies the allegations in Paragraph 85.

86. Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

**ANSWER:** IBM admits that Plaintiffs purport to seek monetary relief as listed in Paragraph 86. IBM denies that Plaintiffs are entitled to any relief—monetary or otherwise. IBM denies the remaining allegations in this paragraph.

87.     Unless and until enjoined and restrained by order of this Court, Defendant IBM's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:**     IBM denies the allegations in Paragraph 87.

88.     Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

**ANSWER:**     IBM agrees that Plaintiffs purport to seek the various forms of relief described in Paragraph 88.  IBM denies that Plaintiffs are entitled to any of the forms of relief described in Paragraph 88.  IBM denies the remaining allegations in this paragraph.

### AS TO THE SECTION TITLED "COUNT FOUR (VIOLATION OF BIPA — 740 ILCS § 14/15(d))"

89.     Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint as though fully set forth herein.

**ANSWER:**     IBM incorporates its answers to Paragraphs 1 to 88, as if fully stated herein.

90.     As alleged above, Defendant IBM violated BIPA by disclosing, redisclosing and otherwise disseminating individuals' biometric identifiers and information, including the biometric identifiers and information of Plaintiffs and Class Members, even though: (a) neither the subjects of the biometric identifiers and information nor their authorized representatives consented to the disclosure and redisclosure; (b) the disclosure and redisclosure did not complete a financial transaction requested or authorized by the subjects of the biometric identifiers and information or their authorized representatives; (c) the disclosure and redisclosure was not required by State or

federal law or municipal ordinance; and (d) the disclosure and redisclosure was not required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

**ANSWER:**    IBM denies the allegations in Paragraph 90.

91.    Defendant IBM's violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

**ANSWER:**    IBM denies the allegations in Paragraph 91.

92.    As a direct and proximate result of Defendant IBM's violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

**ANSWER:**    IBM denies the allegations in Paragraph 92.

93.    Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

**ANSWER:**    IBM admits that Plaintiffs purport to seek monetary relief as listed in Paragraph 93. IBM denies that Plaintiffs are entitled to any relief—monetary or otherwise.  IBM denies the remaining allegations in this paragraph.

94.    Unless and until enjoined and restrained by order of this Court, Defendant IBM's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:**    IBM denies the allegations in Paragraph 94.

95.    Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorneys' fees, costs and expenses relating to this action.

**ANSWER:** IBM agrees that Plaintiffs seek the various forms of relief described in Paragraph 95. IBM denies that Plaintiffs are entitled to any of the forms of relief described in Paragraph 95. IBM denies the remaining allegations in this paragraph.

## AS TO THE SECTION TITLED "COUNT FIVE (VIOLATION OF BIPA — 740 ILCS § 14/15(e))"

96.     Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint as though fully set forth herein.

**ANSWER:** IBM incorporates its answers to Paragraphs 1 to 95, as if fully stated herein.

97.     As alleged above, Defendant IBM violated BIPA because, while in possession of Plaintiffs' and Class Members' biometric identifiers and information, it failed to protect from disclosure those biometric identifiers and information: (a) using the reasonable standard of care within IBM's industry; and (b) in a manner that is the same as or more protective than the manner in which IBM protects and protected other confidential and sensitive information.

**ANSWER:** IBM denies the allegations in Paragraph 97.

98.     Defendant IBM's violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

**ANSWER:** IBM denies the allegations in Paragraph 98.

99.     As a direct and proximate result of Defendant IBM's violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

**ANSWER:** IBM denies the allegations in Paragraph 99.

100.     Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

**ANSWER:** IBM agrees that Plaintiffs purport to seek monetary relief as listed in Paragraph 100. IBM denies that Plaintiffs are entitled to any relief—monetary or otherwise. IBM denies the remaining allegations in this paragraph.

101. Unless and until enjoined and restrained by order of this Court, Defendant IBM's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:** IBM denies the allegations in Paragraph 101.

102. Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

**ANSWER:** IBM agrees that Plaintiffs seek the various forms of relief described in Paragraph 100. IBM denies that Plaintiffs are entitled to any of the forms of relief described in Paragraph 100. IBM denies the remaining allegations in Paragraph 100.

**COUNT SIX**
**(UNJUST ENRICHMENT)**

103. Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint as though fully set forth herein.

**ANSWER:** IBM incorporates its answers to Paragraphs 1 to 102, as if fully stated herein.

104. Defendant IBM obtained a monetary benefit from Plaintiffs and Class Members to their detriment. IBM did so by profiting off of the covert and unauthorized collection of the biometric identifiers and information of Plaintiffs and Class Members, while exposing Plaintiffs

and Class Members to a heightened risk of privacy harms and depriving them of their control over their biometric data.

**ANSWER:**     IBM denies the allegations in Paragraph 104.

105.    Plaintiffs and Class Members did not authorize Defendant IBM to collect, capture, obtain, disclose, redisclose, disseminate and otherwise profit off of their biometric identifiers and information.

**ANSWER:**     IBM lacks knowledge and information sufficient to form a belief as to the truth of the allegations regarding "Plaintiffs and Class Members" and therefore denies the same.  IBM denies the remaining allegations in this paragraph.

106.    Defendant IBM appreciated, accepted and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from IBM's conduct toward Plaintiffs and Class Members as described herein.

**ANSWER:**     IBM denies the allegations in Paragraph 106.

107.    Defendant IBM sold, leased, traded and otherwise profited from — and caused to be sold, leased, traded and otherwise profited from — Plaintiffs' and Class Members' biometric identifiers and information and did not provide fall compensation for the benefit received from Plaintiffs and Class Members.

**ANSWER:**     IBM denies the allegations in Paragraph 107.

108.    Defendant IBM acquired and caused to be acquired Plaintiffs' and Class Members' biometric identifiers and information through inequitable means in that they collected, captured and otherwise obtained biometric data from Plaintiffs' and Class Members' online photos without permission and in violation of Illinois law.

**ANSWER:**     IBM denies the allegations in Paragraph 108.

109.     Plaintiffs and Class Members have no adequate remedy at law.

**ANSWER:**     Paragraph 109 makes a legal conclusion as to which no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 109.

110.     Under the circumstances, it would be unjust and unfair for Defendant IBM to be permitted to retain any of the benefits obtained from Plaintiffs and Class Members and their biometric identifiers and information.

**ANSWER:**     IBM denies the allegations in Paragraph 110.

111.     Under the principles of equity and good conscience, Defendant IBM should not be permitted to retain the biometric identifiers and information belonging to Plaintiffs and Class Members because IBM unlawfully obtained the biometric identifiers and information.

**ANSWER:**     IBM denies the allegations in Paragraph 111.

112.     Defendant IBM should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that it unjustly received as a result of its collection, capture, obtainment, disclosure, redisclosure, dissemination and profiting off of Plaintiffs' and Class Members' biometric identifiers and information, including but not limited to the value of the intellectual property derived therefrom.

**ANSWER:**     IBM denies the allegations in Paragraph 112.

## COUNT SIX
## INJUNCTIVE RELIEF

113.     Plaintiffs restate and reallege all paragraphs of this Second Amended Class Action Complaint as though fully set forth herein.

**ANSWER:**     The allegations in Paragraph 113 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required.  To the extent a response is required, IBM incorporates its answers to paragraphs 1 to 112 as if fully stated herein.

114.    Plaintiffs and Class Members have clear and ascertainable rights in need of protection — namely: (a) the right to have Defendant IBM abide by its obligations under BIPA; (b) the right to control their biometric identifiers and information; and (c) the right to privacy.

**ANSWER:**    The allegations in Paragraph 114 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 114.

115.    Plaintiffs and Class Members have no adequate remedy at law because a legal remedy cannot retrieve the biometric identifiers and information that Defendant IBM unlawfully collected, captured, obtained, disclosed, redisclosed, disseminated and otherwise profited from, and cannot end the invasion of privacy caused by IBM's conduct.

**ANSWER:**    The allegations in Paragraph 115 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 115.

116.    Plaintiffs and Class Members will suffer irreparable harm, as alleged herein, caused by Defendant IBM if its conduct is not so restrained, requiring injunctive relief.

**ANSWER:**    The allegations in Paragraph 116 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required.  To the extent a response is required, IBM denies the allegations in Paragraph 116.

117.    Plaintiffs and Class Members are likely to succeed on the merits because, as alleged herein, Defendant IBM unlawfully collected, captured, obtained, disclosed, redisclosed, disseminated and otherwise profited from Plaintiffs' and Class Members' biometric identifiers and information despite being prohibited from doing so.

**ANSWER:** The allegations in Paragraph 117 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 117.

118. Plaintiffs and Class Members seek injunctive relief: (a) barring Defendant IBM from any further use of Plaintiffs' and Class Members' biometric identifiers and information; (b) barring Defendant IBM from continuing to collect, capture, obtain, disclose, redisclose, (c) requiring Defendant IBM to delete and destroy Plaintiffs' and Class Members' biometric identifiers and information; and (d) requiring Defendant IBM to claw back the biometric identifiers and information from any third parties to whom IBM disclosed, redisclosed and disseminated it.

**ANSWER:** The allegations in Paragraph 117 relate to a claim that was dismissed by the Court on September 15, 2020, and therefore no response is required. To the extent a response is required, IBM denies the allegations in Paragraph 118.

## AS TO THE SECTION TITLED "PRAYER FOR RELIEF"

Plaintiffs' prayer for relief sets forth no factual allegations capable of admission or denial but simply describes the relief sought by Plaintiffs. To the extent a response is required, IBM denies that Plaintiffs are entitled to recover the relief sought.

## AS TO THE SECTION TITLED "DEMAND FOR JURY TRIAL"

Plaintiffs demand a jury trial an all claims so triable.

**ANSWER:** IBM admits that Plaintiffs have demanded a trial by jury.

## IBM'S AFFIRMATIVE DEFENSES

IBM, without admitting any of the allegations, asserts the following defenses to the extent that they are deemed affirmative defenses. By including the defenses herein, IBM does not admit or acknowledge that the defense is an affirmative defense on which IBM bears the burden of proof. IBM expressly reserves the right to raise additional defenses, amend its answers and affirmative and other defenses, and assert counterclaims as they may become known through the course of further investigation and discovery:

### FIRST DEFENSE
### (STATUTE OF LIMITATIONS)

1. Plaintiffs' claims and the putative class's claims are barred to the extent that they arose outside the applicable statutes of limitations and repose. Plaintiff and the putative class cannot seek recovery for alleged violations that took place prior to the applicable statute of limitations. *See*, *e.g.*, 735 ILCS 5/13-201 (providing that "[a]ctions for slander, libel or publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued); 735 ILCS 5/13-202 (two-year limitations period to recover damages for an alleged injury to the person or a statutory penalty).

### SECOND DEFENSE
### (NO NEGLIGENT, INTENTIONAL, OR RECKLESS CONDUCT)

2. Plaintiffs' claims and the putative class's claims are barred in whole or in part by IBM's good faith, and the absence of negligent, intentional, or reckless conduct. To the extent that BIPA applies to IBM's conduct, IBM is not liable because it relied in good faith upon a reasonable interpretation of BIPA's statutory language and any alleged violation was not negligent, intentional, or reckless.

## THIRD DEFENSE
### (CONSENT)

3.     To the extent Plaintiffs allege that IBM is liable because Plaintiffs' and/or putative class members' biometric identifiers or biometric information was collected without their consent (which IBM denies), such claims are barred because Plaintiffs and/or putative class members voluntarily consented (either implicitly or expressly) to the collection of such information by publicly posting their photographs on Flickr, agreeing and consenting to Flickr's terms and conditions, and their photographs were governed by their selection of a Creative Commons license.

## FOURTH DEFENSE
### (NO ATTORNEYS' FEES OR COSTS)

4.     Any request by Plaintiffs or the putative class members for attorneys' fees is contrary to public policy, and Plaintiffs and/or the putative class cannot prove they are entitled to attorneys' fees for purported violations of BIPA.  Plaintiffs and the putative class can recover attorneys' fees under BIPA only if they are the "prevailing party."  *See* 740 ILCS 14/20.  Because Plaintiffs' claims are unfounded, Plaintiffs are not the "prevailing party" under BIPA and therefore are not entitled to attorneys' fees.

## FIFTH DEFENSE
### (NO PUNITIVE OR EXEMPLARILY DAMAGES)

5.     IBM acted at all times in good faith and without malice, willfulness, or reckless indifference, barring any recovery of punitive or exemplary damages by Plaintiffs and the putative class members.

## SIXTH DEFENSE
### (UNCONSTITUTIONAL)

6.     Any award of statutory or punitive damages would constitute an unconstitutional penalty under the circumstances of this case, and would violate the due process and equal protection guarantees, and other substantive and procedural safeguards afforded by the First, Fifth,

Sixth, and Fourteenth Amendments to the United States Constitution, and comparable provisions of the Illinois Constitution.

## SEVENTH DEFENSE
### (ESTOPPEL, WAIVER, LACHES, AND UNCLEAN HANDS)

7.      Plaintiffs and the putative class members' claims are barred in whole or in part by the doctrines of estoppel, waiver, laches, and/or unclean hands.  Plaintiffs and the putative class members approve, participated in, and never objected to the conduct of which they now complain.  Specifically Plaintiffs and the putative class members publicly posted their photographs on Flickr, agreed and consented to Flickr's terms and conditions, and their photographs were governed by a Creative Commons license which they selected. As a result, Plaintiffs and the putative class members are barred from now bringing their claims under the doctrines of estoppel, waiver, laches, and/or unclean hands.

## EIGHTH DEFENSE
### (RATIFICATION AND ACQUIESCENCE)

8.      Plaintiffs and the putative class members' claims are barred in whole or in part by the doctrines of ratification and acquiescence.  Plaintiffs and the putative class members approved and participated in the conduct of which they now complain, even after they knew or should have known of the conduct alleged in the SAC.  Plaintiffs and the putative class members' claims are thus barred under the doctrines of ratification and acquiescence.

## NINTH DEFENSE
### (FAILURE TO MITIGATE DAMAGES)

9.      Plaintiffs and the putative class members have failed to mitigate their damages, if any, and any recovery should therefore be reduced or denied accordingly.

## TENTH DEFENSE
### (NO BIOMETRIC INFORMATION)

10.     Any information collected from Plaintiffs and the putative class members does not constitute "biometric information" or "biometric identifiers" under BIPA.

## ELEVENTH DEFENSE
### (ASSUMPTION OF THE RISK)

11.     Plaintiffs and the putative class members' claims are barred by the doctrine of primary assumption of the risk.

## TWELFTH DEFENSE
### (DORMANT COMMERCE CLAUSE)

12.     Plaintiffs and the putative class members' claims are barred in whole or in part by the dormant Commerce Clause of the United States Constitution.  If the conduct alleged in the SAC qualifies as a violation of BIPA, BIPA would have the effect of allowing Illinois to regulate conduct occurring entirely or substantially outside of Illinois.  BIPA would subject IBM to inconsistent regulations and would usurp the prerogative of other states to make their own policy choices.

## THIRTEENTH DEFENSE
### (EXTRATERRITORIALITY)

13.     Plaintiffs and the putative class members' claims are barred in whole or in part because BIPA does not extend extraterritorially.  BIPA does not apply outside Illinois because the Illinois Legislature did not clearly state that it intended for BIPA to apply outside Illinois.  The conduct alleged in the SAC that purportedly violated BIPA took place entirely or predominantly outside of Illinois.  BIPA is there inapplicable and cannot regulate or punish the conduct alleged in the SAC.

## PRAYER FOR RELIEF

WHEREFORE, having answered the SAC and stated its Affirmative Defenses, IBM respectfully requests:

1.     That Plaintiffs and the putative class members take nothing for each and every claim for relief averred in the SAC;

2.     That judgment on the SAC, and each and every claim for relief therein, be entered in favor of IBM and against Plaintiffs; and

3.     For such other and further relief as the Court deems just and proper.


Dated:  October 7, 2020                                    Respectfully Submitted,

*/s/ Stephen A. Broome*
Stephen A. Broome
*Admitted Pro Hac Vice*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90405
Telephone: (213) 443-3285
stephenbroome@quinnemanuel.com

Lazar P. Raynal
Kaitlin P. Sheehan
David Lakin
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705-7400
lazarraynal@quinnemanuel.com
kaitlinsheehan@quinnemanuel.com
davidlakin@quinnemanuel.com

***Counsel for IBM***

## CERTIFICATE OF SERVICE

The undersigned attorney for Counsel for IBM hereby certifies that on October 7, 2020, the foregoing was electronically filed with the U.S. District Court Clerk, Northern District of Illinois, Eastern Division, by using the CM/ECF filing system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Stephen A. Broome*
*Stephen A. Broome*
Counsel for IBM