**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEVEN VANCE and TIM JANECYK, for themselves and others similarly situated, | ) ) | Case No. 20 C 577 |
| | ) | |
| Plaintiffs, | ) | Judge Nancy L. Maldonado |
| | ) | |
| v. | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

**JOINT STATUS REPORT**

Pursuant to the Court's October 5, 2022 Order (Dkt. 182), Plaintiffs Steven Vance and Tim Janecyk (collectively "Plaintiffs") and Defendant International Business Machines Corporation ("Defendant" or "IBM," and together with Plaintiffs, the "Parties"), by and through their undersigned counsel, submit this Joint Status Report on a discovery schedule.

**I.    JOINT STATEMENT**

Since the Court struck the scheduled July 12, 2022 status hearing on discovery at the Parties' request, the Parties have continued to work on resolving numerous issues related to IBM's search of the XIV Hard Drive and the remaining depositions of IBM witnesses. In connection with those efforts, the Parties have exchanged dozens of pages of emails (one chain is over 40 pages) and have met and conferred on six occasions. The issues were, and remain, complex – as the XIV Hard Drive contains over 600 million file paths/names. Notwithstanding fundamental disagreements about the way in which searches of the XIV Hard Drive should proceed, the Parties continued making proposals and counterproposals in an effort to reach total agreement or, at minimum, to avoid burdening the Court with the broad dispute.

1

While the Parties have not reached agreement on all issues, they have significantly narrowed them to a small set of discrete issues. In Section II, below, the Parties set forth the disputed issues in broad terms and respectfully suggest that the Court set a status hearing for the Parties to further describe the issues and for the Court to determine if it wants briefing on the issues.

With respect to the areas where the Parties have reached agreement, as a result of the agreements and compromises, the number of documents to be searched and reviewed has been significantly narrowed. Nevertheless, IBM anticipates needing 90 days to load, review and produce any additional non-privileged responsive documents. The schedule proposed in Section III, below, accounts for the time it will take to complete that process.

## II.    DISPUTED ISSUES

### A.    Searches of File Types

The Parties have agreed on a process whereby IBM will narrow the documents to be searched by filepaths/names associated with certain custodians and then further by file type. This process will entail IBM collecting, loading, and running search terms against an additional 140,000 documents.

The Parties have a dispute about how to search for and review documents related to certain file types—namely, image files (*e.g.*, .jpg, .jpeg and .png) and text files (.txt). IBM has represented to Plaintiffs that even after various agreed-upon methods of narrowing the number of files to be reviewed, there remain approximately 10 million image files and 3.7 million text files. The Parties disagree on the methods to be used to search these files.

### 1.    Plaintiffs' Proposal

**.txt files:** With respect to .txt files, Plaintiffs seek to have IBM run text searches of the files to find relevant documents. By definition, .txt files contain searchable text. Further, based on previous .txt files produced by IBM, IBM collected and saved .txt files containing highly relevant information regarding the processing of image files, including the geographic locations (*i.e.*, x, y coordinates) of 68 fiducial points on facial images. This type of data lies at the heart of this biometric litigation and, thus, the relevance of the documents significantly outweighs any claimed burden of conducting a review.

**Image Files:** With respect to the image files, Plaintiffs seek a review of a random, statistically significant sample set of the images to determine what types of images are contained in the files. Plaintiffs are interested in facial images showing fiducial points, bounding boxes or evidence of other computer processing. Plaintiffs do not anticipate that the sample size would be significant. *See* [https://verstaresearch.com/newsletters/an-interactive-graph-for-choosing-sample-size/](https://verstaresearch.com/newsletters/an-interactive-graph-for-choosing-sample-size/) (last viewed on Oct. 12, 2022). Should the sample reveal the existence of the types of images in which Plaintiffs are interested, it will also show where those files are located and the way in which IBM labeled file-paths containing those images. Plaintiffs' proposed methodology will allow the Parties to learn what type of data is contained within the image files without requiring a review of all of the images. Further, this methodology does not require IBM to load all 10 million images into a review database. Rather, only the small amount of images in the random sample need be loaded.

### 2.    Defendant's Proposal

**.txt files:**  Plaintiffs' proposal that IBM collect and load 3,720,870 .txt files is not reasonable and unduly burdensome. There is no basis for believing these files relate to the case.

As noted above, IBM has already agreed to collect and load an additional 140,000 documents (a process that is going to take about a month to complete). Collecting and loading over 3 million .txt files is a logistically cumbersome process that will take months to complete, extending out the discovery deadline beyond anything that is reasonable this late in the case. In addition, even if IBM hypothetically could collect and load all 3.7 million .txt files, it would then have to conduct a manual human review of the files to determine whether the .txt file is relevant to this case—the XIV Hard Drive is a large shared drive that was used by researchers beyond the four involved in DiF and for projects beyond DiF. Accordingly, any file will have to be manually reviewed prior to production to confirm it is a file related to this case.

**Image files.** The process of collecting, loading, and sampling image files is logistically cumbersome and presents burden issues similar to those noted above with respect to .txt files. There is no basis for believing these image files are relevant to the case either. Moreover, once the sampling is complete, even if images are identified that have the items Plaintiffs state they are interested in—fiducial points, bounding boxes, or other evidence of computer processing— IBM would have to engage in a manual review of each image file to determine whether it is an image relevant to the Diversity in Faces research project and not one of the many other research projects IBM researchers worked on and saved on the XIV Hard Drive. This manual review process is potentially logistically impossible in terms of determining whether an image is relevant to DiF as compared to another research project and would take months and hundreds of thousands of dollars to complete.

### B.    Searches of Additional Custodians' Documents

#### 1.    Plaintiffs' Proposal

Plaintiffs have identified fifteen additional custodians they believe should have been included in IBM's original searches for documents. In the spirit of compromise, during the meet and confer process, Plaintiffs agreed to narrow the list to three custodians who worked or interacted with the Diversity in Faces Dataset and culled the list of proposed search terms from all previously-used search terms to a set of twenty-two agreed-upon terms. Plaintiffs made their concessions, while expressly reserving the right to revert to their original request if the Parties could not reach agreement. While Defendant has not agreed with Plaintiffs' proposal – only agreeing to search the documents of two of the three proposed custodians – Plaintiffs nevertheless will stand by it. It is Plaintiffs' understanding that the one custodian in dispute oversaw the work of the two custodians not in dispute.

#### 2.    Defendant's Proposal

IBM believes that Plaintiffs' request for additional custodians' documents is untimely, unduly burdensome, and not proportional to the needs of the case. With respect to timing, Plaintiffs first made this request on June 23, 2022—a year and a half after the Parties initially began electronic discovery and disclosed custodians in January 2021, and seven months after this Court issued its November 2021 Order holding that, absent narrow issues related to the deletion of Chiao-fe Shu and Mandis Beigi's email accounts, written discovery in this case was closed. Dkt. No. 136. Additionally, Plaintiffs filed three motions to compel and never once requested these additional custodian searches, despite having documents disclosing their identities and roles. Plaintiffs thus had multiple opportunities to raise this request earlier. Their request for 15 additional custodians at this late stage was not supported by any basis justifying the belated

nature of the request. Nevertheless, IBM offered to compromise by searching the files of two additional custodians: Kush Varshney and Sam Hoffman. Mr. Varshney received access to the DiF Dataset and subsequently sent it to Mr. Hoffmann, who was involved in IBM research's efforts with respect to the IVA Factsheet. This process will result in IBM reviewing over 3,058 documents. IBM rejects Plaintiffs' request to add Aleksandra Mojsilovic. IBM previously asked Plaintiffs the basis for adding Mojsilovic and were not provided any reason. Plaintiffs now claim Mojsilovic purportedly oversaw the work of Varshney and Hoffmann. It is unclear if that representation—made for the first time on October 13—is accurate. Nonetheless, there is no basis for adding Mojsilovic (an IBM employee who Plaintiffs have known about for over a year) at this stage and a search of her files would add thousands more documents to the review.

## III.    PROPOSED SCHEDULE

### A.    Fact Discovery - Agreed[1]

- January 13, 2023: Deadline for IBM to complete production of additional documents

- March 14, 2023: Close of fact discovery

### B.    Expert Discovery – Disputed

#### 1.    Plaintiffs' Proposal[2]

- April 13, 2023: Plaintiffs' expert report(s) due

- May 15, 2023: Defendant's expert report(s) due

---

[1]  These deadlines are agreed to by IBM subject to the Court denying Plaintiffs' requests in Section II. Should the Court grant some, or all, of the relief that Plaintiffs are seeking in Section II, modification to the deadlines provided for herein will have to be modified according to the scope of the order and amount of materials subject to collection and review.

[2] Plaintiffs' proposed format of the submission of Plaintiffs' expert reports, followed by the submission of Defendant's expert reports, and then rebuttal reports generally follows the joint proposal made by the Parties in their June 17, 2022 Joint Status Report. *See* Dkt. 169 at 1-2. In that Joint Status Report, the Parties disputed whether Plaintiffs would be entitled to rebuttal reports as of right. *Id.* at 2.

- June 14, 2023: Rebuttal report(s) due

- July 14, 2023: Close of expert discovery

2. **Defendant's Proposal**

- April 13, 2023: Deadline for the Parties to serve opening expert reports

- May 15, 2023: Deadline for the Parties to serve rebuttal expert reports

- June 14, 2023: Close of expert discovery

DATED: October 13, 2022

Respectfully submitted,

/s/ Scott R. Drury
SCOTT R. DRURY

Scott R. Drury
DRURY LEGAL, LLC
6 Carriage Lane
Highwood, Illinois 60040
312.358.8225
scott@drurylegal.com

*Counsel for Plaintiffs*

/s/ Kenneth A. Held
KENNETH A. HELD

Gary Lynch
Jamisen A. Etzel
Kenneth A. Held
CARLSON LYNCH LLP
1133 Penn Avenue, Floor 5
Pittsburgh, PA 15222
(412) 322-9243
glynch@lcllp.com
ken@lcllp.com

Katrina Carroll
Kyle Shamberg
CARLSON LYNCH LLP
111 West Washington Street, Suite 1240
Chicago, Illinois 60602
312.750.1265
kcarroll@lcllp.com
kshamberg@lcllp.com

*Counsel for Plaintiffs*

*/s/ Kaitlin P. Sheehan*
Kaitlin P. Sheehan
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705-7400
Fax: (312) 705-7401
kaitlinsheehan@quinnemanuel.com

Stephen A. Broome (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
856 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
stephenbroome@quinnemanuel.com

Alison Lo (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
alisonlo@quinnemanuel.com

Grace S. Pusavat (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
2755 E. Cottonwood Parkway, Suite 430
Salt Lake City, Utah 84121
Telephone: (801) 515-7300
Fax: (801) 515-7400
gracepusavat@quinnemanuel.com

*Counsel for IBM*

## CERTIFICATE OF SERVICE

Scott R. Drury, an attorney, certifies that on October 13, 2022, the foregoing was electronically filed with the U.S. District Court Clerk, Northern District of Illinois, Eastern Division, by using the CM/ECF filing system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ Scott R. Drury